(Slip Opinion) OCTOBER TERM, 2017 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ROSALES-MIRELES *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 16–9493.   Argued February 21, 2018—Decided June 18, 2018

Each year, district courts sentence thousands of individuals to imprisonment for violations of federal law.  To help ensure certainty and fairness in those sentences, federal district courts are required to consider the advisory United States Sentencing Guidelines.  Prior to sentencing, the United States Probation Office prepares a presentence investigation report to help the court determine the applicable Guidelines range.  Ultimately, the district court is responsible for ensuring the Guidelines range it considers is correct.  At times, however, an error in the calculation of the Guidelines range goes unnoticed by the court and the parties.  On appeal, such errors not raised in the district court may be remedied under Federal Rule of Criminal Procedure 52(b), provided that, as established in *United States* v. *Olano*, 507 U. S. 725: (1) the error was not "intentionally relinquished or abandoned," (2) the error is plain, and (3) the error "affected the defendant's substantial rights," *Molina-Martinez* v. *United States*, 578 U. S. ___, ___.   If those conditions are met, "the court of appeals should exercise its discretion to correct the forfeited error if the error '"seriously affects the fairness, integrity or public reputation of judicial proceedings."'" *Id.,* at ___.  This last consideration is often called *Olano*'s fourth prong.  The issue here is when a Guidelines error that satisfies *Olano*'s first three conditions warrants relief under the fourth prong.

Petitioner Florencio Rosales-Mireles pleaded guilty to illegal reentry into the United States.  In calculating the Guidelines range, the Probation Office's presentence report mistakenly counted a state misdemeanor conviction twice.  As a result, the report yielded a Guidelines range of 77 to 96 months, when the correctly calculated range would have been 70 to 87 months.  Rosales-Mireles did not ob-

ject to the error in the District Court, which relied on the miscalcu-
lated Guidelines range and sentenced him to 78 months of imprison-
ment. On appeal, Rosales-Mireles challenged the incorrect Guide-
lines range for the first time. The Fifth Circuit found that the
Guidelines error was plain and that it affected Rosales-Mireles' sub-
stantial rights because there was a "reasonable probability that he
would have been subject to a different sentence but for the error."
The Fifth Circuit nevertheless declined to remand the case for resen-
tencing, concluding that Rosales-Mireles had not established that the
error would seriously affect the fairness, integrity, or public reputa-
tion of judicial proceedings because neither the error nor the result-
ing sentence "would shock the conscience."

*Held*: A miscalculation of a Guidelines sentencing range that has been
determined to be plain and to affect a defendant's substantial rights
calls for a court of appeals to exercise its discretion under Rule 52(b)
to vacate the defendant's sentence in the ordinary case. Pp. 6–15.

   (a) Although "Rule 52(b) is permissive, not mandatory," *Olano*, 507
U. S., at 735, it is well established that courts "should" correct a for-
feited plain error affecting substantial rights "if the error 'seriously
affect[s] the fairness, integrity or public reputation of judicial pro-
ceedings,' " *id.,* at 736. Like the narrow rule rejected in *Olano,* which
would have called for relief only for a miscarriage of justice, the Fifth
Circuit's shock-the-conscience standard too narrowly confines the ex-
tent of the court of appeals' discretion. It is not reflected in Rule
52(b), nor in how the plain-error doctrine has been applied by this
Court, which has reversed judgments for plain error based on inad-
vertent or unintentional errors by the court or the parties below and
has remanded cases involving such errors, including sentencing er-
rors, for consideration of *Olano*'s fourth prong. The errors are not re-
quired to amount to a "powerful indictment" of the system. The Fifth
Circuit's emphasis on the district judge's "competence or integrity"
also unnecessarily narrows *Olano*'s instruction to correct an error if it
seriously affects "judicial proceedings." Pp. 6–8.

   (b) The effect of the Fifth Circuit's heightened standard is especial-
ly pronounced in cases like this one. An error resulting in a higher
range than the Guidelines provide usually establishes a reasonable
probability that a defendant will serve a prison sentence greater than
"necessary" to fulfill the purposes of incarceration, 18 U. S. C.
§3553(a). See *Molina-Martinez*, 578 U. S., at ___. That risk of un-
necessary deprivation of liberty particularly undermines the fairness,
integrity, or public reputation of judicial proceedings in the context of
a plain Guidelines error because Guidelines miscalculations ulti-
mately result from judicial error, as the district court is charged in
the first instance with ensuring the Guidelines range it considers is

correct. Moreover, remands for resentencing are relatively inexpensive proceedings compared to remands for retrial. Ensuring the accuracy of Guidelines determinations also furthers the Sentencing Commission's goal of achieving uniformity and proportionality in sentencing more broadly, since including uncorrected sentences based on incorrect Guidelines ranges in the data the Commission collects could undermine the Commission's ability to make appropriate revisions to the Guidelines. Because any exercise of discretion at the fourth prong of *Olano* inherently requires "a case-specific and fact-intensive" inquiry, *Puckett* v. *United States*, 556 U. S. 129, 142, countervailing factors may satisfy the court of appeals that the fairness, integrity, and public reputation of the proceedings will be preserved absent correction. But there are no such factors in this case. Pp. 8–11.

(c) The Government and dissent maintain that even though the Fifth Circuit's standard was inaccurate, Rosales-Mireles is still not entitled to relief. But their arguments are unpersuasive. They caution that granting this type of relief would be inconsistent with the Court's statements that discretion under Rule 52(b) should be exercised "sparingly," *Jones* v. *United States*, 527 U. S. 373, 389, and reserved for "exceptional circumstances," *Meyer* v. *Kenmore Granville Hotel Co.*, 297 U. S. 160. In contrast to the *Jones* remand, however, no additional jury proceedings would be required in a remand for resentencing based on a Guidelines miscalculation. Plus, the circumstances of Rosales-Mireles' case are exceptional under this Court's precedent, as they are reasonably likely to have resulted in a longer prison sentence than necessary and there are no countervailing factors that otherwise further the fairness, integrity, or public reputation of judicial proceedings. The Government and dissent also assert that Rosales-Mireles' sentence is presumptively reasonable because it falls within the corrected Guidelines range. But a court of appeals can consider a sentence's substantive reasonableness only after it ensures "that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *Gall* v. *United States*, 552 U. S. 38, 51. If a district court cannot properly determine whether, considering all sentencing factors, including the correct Guidelines range, a sentence is "sufficient, but not greater than necessary," 18 U. S. C. §3553(a), the resulting sentence would not bear the reliability that would support a "presumption of reasonableness" on review. See 552 U. S., at 51. And regardless of its ultimate reasonableness, a sentence that lacks reliability because of unjust procedures may well undermine public perception of the proceedings. Finally, the Government and dissent maintain that the Court's decision will create an opportunity for "sandbagging" that Rule 52(b) is supposed to prevent. But that con-

cern fails to account for the realities at play in sentencing proceedings, where it is highly speculative that a defendant would benefit from a strategy of deliberately forgoing an objection in the district court, with hopes of arguing for reversal under plain-error review later. Pp. 12–14.

850 F. 3d 246, reversed and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, GINSBURG, BREYER, KAGAN, and GORSUCH, JJ., joined. THOMAS, J., filed a dissenting opinion, in which ALITO, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

### No. 16–9493

## FLORENCIO ROSALES-MIRELES, PETITIONER *v.* UNITED STATES

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[June 18, 2018]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Federal Rule of Criminal Procedure 52(b) provides that a court of appeals may consider errors that are plain and affect substantial rights, even though they are raised for the first time on appeal. This case concerns the bounds of that discretion, and whether a miscalculation of the United States Sentencing Guidelines range, that has been determined to be plain and to affect a defendant's substantial rights, calls for a court of appeals to exercise its discretion under Rule 52(b) to vacate the defendant's sentence. The Court holds that such an error will in the ordinary case, as here, seriously affect the fairness, integrity, or public reputation of judicial proceedings, and thus will warrant relief.

## I

### A

Each year, thousands of individuals are sentenced to terms of imprisonment for violations of federal law. District courts must determine in each case what constitutes a sentence that is "sufficient, but not greater than necessary," 18 U. S. C. §3553(a), to achieve the overarching

sentencing purposes of "retribution, deterrence, incapaci-
tation, and rehabilitation." *Tapia* v. *United States*, 564
U. S. 319, 325 (2011); 18 U. S. C. §§3551(a), 3553(a)(2).
Those decisions call for the district court to exercise dis-
cretion. Yet, to ensure "'certainty and fairness'" in sen-
tencing, district courts must operate within the framework
established by Congress. *United States* v. *Booker*, 543
U. S. 220, 264 (2005) (quoting 28 U. S. C. §991(b)(1)(B)).

The Sentencing Guidelines serve an important role in
that framework. "'[D]istrict courts *must* begin their anal-
ysis with the Guidelines and remain cognizant of them
throughout the sentencing process.'" *Peugh* v. *United
States*, 569 U. S. 530, 541 (2013) (quoting *Gall* v. *United
States*, 552 U. S. 38, 50, n. 6 (2007); emphasis in original).
Courts are not bound by the Guidelines, but even in an
advisory capacity the Guidelines serve as "a meaningful
benchmark" in the initial determination of a sentence and
"through the process of appellate review." 569 U. S.,
at 541.

Of course, to consult the applicable Guidelines range, a
district court must first determine what that range is.
This can be a "complex" undertaking. *Molina-Martinez* v.
*United States*, 578 U. S. ___, ___ (2016) (slip op., at 4).
The United States Probation Office, operating as an arm
of the district court, first creates a presentence investiga-
tion report, "which includes a calculation of the advisory
Guidelines range it considers to be applicable.*" Id.,* at ___
(slip op., at 3); see Fed. Rules Crim. Proc. 32(c)(1)(A),
(d)(1); United States Sentencing Commission, Guidelines
Manual §1B1.1(a) (Nov. 2016) (USSG). That calculation
derives from an assessment of the "offense characteristics,
offender characteristics, and other matters that might be
relevant to the sentence." *Rita* v. *United States*, 551 U. S.
338, 342 (2007) (internal quotation marks omitted). Spe-
cifically, an offense level is calculated by identifying a base
level for the offense of conviction and adjusting that level

to account for circumstances specific to the defendant's case, such as how the crime was committed and whether the defendant accepted responsibility. See USSG §§1B1.1(a)(1)–(5). A numerical value is then attributed to any prior offenses committed by the defendant, which are added together to generate a criminal history score that places the defendant within a particular criminal history category. §§1B1.1(a)(6), 4A1.1. Together, the offense level and the criminal history category identify the applicable Guidelines range. §1B1.1(a)(7).

## B

The district court has the ultimate responsibility to ensure that the Guidelines range it considers is correct, and the "[f]ailure to calculate the correct Guidelines range constitutes procedural error." *Peugh*, 569 U. S., at 537. Given the complexity of the calculation, however, district courts sometimes make mistakes. It is unsurprising, then, that "there will be instances when a district court's sentencing of a defendant within the framework of an incorrect Guidelines range goes unnoticed" by the parties as well, which may result in a defendant raising the error for the first time on appeal. *Molina-Martinez*, 578 U. S., at \_\_\_ (slip op., at 4). Those defendants are not entirely without recourse.

Federal Rule of Criminal Procedure 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the [district] court's attention." In *United States* v. *Olano*, 507 U. S. 725 (1993), the Court established three conditions that must be met before a court may consider exercising its discretion to correct the error. "First, there must be an error that has not been intentionally relinquished or abandoned. Second, the error must be plain—that is to say, clear or obvious. Third, the error must have affected the defendant's substantial rights." *Molina-Martinez*, 578

U. S., at ___ (slip op., at 4) (citations omitted). To satisfy this third condition, the defendant ordinarily must "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Ibid.* (quoting *United States* v. *Dominguez Benitez*, 542 U. S. 74, 76, 82 (2004)). Once those three conditions have been met, "the court of appeals should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Molina-Martinez*, 578 U. S., at ___ (slip op., at 4–5) (internal quotation marks omitted). It is this last consideration, often called *Olano*'s fourth prong, that we are asked to clarify and apply in this case.

C

Petitioner Florencio Rosales-Mireles pleaded guilty to illegal reentry in violation of 8 U. S. C. §§1326(a), (b)(2). The Probation Office in its presentence investigation report mistakenly counted a 2009 state conviction of misdemeanor assault twice. This double counting resulted in a criminal history score of 13, which placed Rosales-Mireles in criminal history category VI. Combined with his offense level of 21, that yielded a Guidelines range of 77 to 96 months. Had the criminal history score been calculated correctly, Rosales-Mireles would have been in criminal history category V, and the resulting Guidelines range would have been 70 to 87 months. See USSG ch. 5, pt. A (sentencing table).

Rosales-Mireles did not object to the double-counting error before the District Court. Relying on the erroneous presentence investigation report, and after denying Rosales-Mireles' request for a downward departure, the District Court sentenced Rosales-Mireles to 78 months of imprisonment, one month above the lower end of the Guidelines range that everyone thought applied.

On appeal, Rosales-Mireles argued for the first time

that his criminal history score and the resulting Guidelines range were incorrect because of the double counting of his 2009 conviction. Because he had not objected in the District Court, the Court of Appeals for the Fifth Circuit reviewed for plain error. 850 F. 3d 246, 248 (2017).

Applying the *Olano* framework, the Fifth Circuit concluded that Rosales-Mireles had established that the Guidelines miscalculation constituted an error that was plain, satisfying *Olano*'s first two conditions. It also held that the error affected Rosales-Mireles' substantial rights, thus satisfying the third condition, because there was "a reasonable probability that he would have been subject to a different sentence but for the error." 850 F. 3d, at 249. In reaching that conclusion, the Fifth Circuit rejected the Government's argument that Rosales-Mireles would have received the same sentence regardless of the Guidelines error, because the District Court had denied a downward departure "based, in part, on Rosales-Mireles' criminal history," which "erroneously included an extra conviction." *Ibid.*

The Fifth Circuit nevertheless declined to exercise its discretion to vacate and remand the case for resentencing because it concluded that Rosales-Mireles failed to establish that the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings. In its view, "the types of errors that warrant reversal are ones that would shock the conscience of the common man, serve as a powerful indictment against our system of justice, or seriously call into question the competence or integrity of the district judge." *Id.*, at 250 (internal quotation marks and alterations omitted). Because Rosales-Mireles' sentence of 78 months fell within the correct range of 70 to 87 months, the Fifth Circuit held that neither the error nor the resulting sentence "would shock the conscience." *Ibid.*

The Fifth Circuit's articulation of *Olano*'s fourth prong

is out of step with the practice of other Circuits.[1]   We granted certiorari to resolve that conflict, 582 U. S. ___ (2017), and now reverse.

## II

### A

Although "Rule 52(b) is permissive, not mandatory," *Olano*, 507 U. S., at 735, it is well established that courts "should" correct a forfeited plain error that affects substantial rights "if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.,* at 736 (quoting *United States* v. *Atkinson*, 297 U. S. 157, 160 (1936); alteration omitted); see also *Molina-Martinez*, 578 U. S., at ___–___ (slip op., at 4–5).  The Court in *Olano* rejected a narrower rule that would have called for relief only "'in those circumstances in which a miscarriage of justice would otherwise result,'" that is to say, where a defendant is actually innocent.  507 U. S., at 736 (quoting *United States* v. *Young*, 470 U. S. 1, 15 (1985)).  By focusing instead on principles of fairness, integrity, and public reputation, the Court recognized a broader category of errors that warrant correction on plain-error review.  See 507 U. S., at 736–737.

Like the miscarriage-of-justice rule that the Court rejected in *Olano*, the Fifth Circuit's standard is unduly restrictive.  To be sure, a conclusion that an error "shock[s] the conscience of the common man, serve[s] as a powerful indictment against our system of justice, or seriously call[s] into question the competence or integrity of the district judge," 850 F. 3d, at 250 (internal quotation

_____

[1] Compare 850 F. 3d 246, 250 (CA5 2017), with *United States* v. *Dahl*, 833 F. 3d 345, 357, 359 (CA3 2016); *United States* v. *Figueroa-Ocasio*, 805 F. 3d 360, 367–368, 373–374 (CA1 2015); *United States* v. *Sabillon-Umana*, 772  F. 3d 1328, 1333–1334 (CA10 2014) (Gorsuch, J.); *United States* v. *Joseph*, 716 F. 3d 1273, 1281 (CA9 2013); *United States* v. *Garrett*, 528 F. 3d 525, 527, 529–530 (CA7 2008).

marks omitted), would demand an exercise of discretion to correct the error. Limiting relief only to those circumstances, however, too narrowly confines the extent of a court of appeals' discretion.

The "shock the conscience" standard typically is employed when determining whether governmental action violates due process rights under the Fifth and Fourteenth Amendments. See *County of Sacramento* v. *Lewis*, 523 U. S. 833, 847, n. 8 (1998) ("[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience"). This Court has said that the "shock the conscience" standard is satisfied where the conduct was "intended to injure in some way unjustifiable by any government interest," or in some circumstances if it resulted from deliberate indifference. *Id.,* at 849–850.

That standard is not reflected in Rule 52(b) itself, nor in how this Court has applied the plain-error doctrine. The Court repeatedly has reversed judgments for plain error on the basis of inadvertent or unintentional errors of the court or the parties below. See, *e.g., Silber* v. *United States*, 370 U. S. 717, 717–718 (1962) (*per curiam*) (reversing judgment for plain error as a result of insufficient indictment); *Brasfield* v. *United States*, 272 U. S. 448, 449–450 (1926) (reversing judgment for plain error where the trial judge improperly inquired of a jury's numerical division); *Clyatt* v. *United States*, 197 U. S. 207, 222 (1905) (reversing judgment for plain error where the Government presented insufficient evidence to sustain conviction). The Court also "routinely remands" cases involving inadvertent or unintentional errors, including sentencing errors, for consideration of *Olano*'s fourth prong with the understanding that such errors may qualify for relief. *Hicks* v. *United States*, 582 U. S. \_\_\_, \_\_\_ (2017) (GORSUCH, J., concurring) (slip op., at 2).

The Fifth Circuit's additional focus on errors that "serve as a powerful indictment against our system of justice, or seriously call into question the competence or integrity of the district judge," 850 F. 3d, at 250 (internal quotation marks omitted), similarly alters the Rule 52(b) standard. The Court has never said that errors must amount to a "powerful indictment" of the system, a phrase which implies by its terms that the only errors worthy of correction are those that rise to the level of grossly serious misconduct. Similarly, the Fifth Circuit's emphasis on the "competence or integrity of the district judge" narrows *Olano*'s instruction that an error should be corrected if it seriously affects "judicial proceedings." In articulating such a high standard, the Fifth Circuit substantially changed *Olano*'s fourth prong.

B

The effect of the Fifth Circuit's heightened standard is especially pronounced in a case like this one. A plain Guidelines error that affects a defendant's substantial rights is precisely the type of error that ordinarily warrants relief under Rule 52(b).

In *Molina-Martinez*, the Court recognized that "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." 578 U. S., at ___ (slip op., at 9). In other words, an error resulting in a higher range than the Guidelines provide usually establishes a reasonable probability that a defendant will serve a prison sentence that is more than "necessary" to fulfill the purposes of incarceration. 18 U. S. C. §3553(a); *Tapia*, 564 U. S., at 325. "To a prisoner," this prospect of additional "time behind bars is not some theoretical or mathematical concept." *Barber* v. *Thomas*, 560 U. S. 474, 504

(2010) (KENNEDY, J., dissenting). "[A]ny amount of actual jail time" is significant, *Glover* v. *United States*, 531 U. S. 198, 203 (2001), and "ha[s] exceptionally severe consequences for the incarcerated individual [and] for society which bears the direct and indirect costs of incarceration," *United States* v. *Jenkins*, 854 F. 3d 181, 192 (CA2 2017). The possibility of additional jail time thus warrants serious consideration in a determination whether to exercise discretion under Rule 52(b). It is crucial in maintaining public perception of fairness and integrity in the justice system that courts exhibit regard for fundamental rights and respect for prisoners "as people." T. Tyler, Why People Obey the Law 164 (2006).

The risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error because of the role the district court plays in calculating the range and the relative ease of correcting the error. Unlike "case[s] where trial strategies, in retrospect, might be criticized for leading to a harsher sentence," Guidelines miscalculations ultimately result from judicial error. *Glover*, 531 U. S., at 204; see also *Peugh*, 569 U. S., at 537. That was especially so here where the District Court's error in imposing Rosales-Mireles' sentence was based on a mistake made in the presentence investigation report by the Probation Office, which works on behalf of the District Court. Moreover, "a remand for resentencing, while not costless, does not invoke the same difficulties as a remand for retrial does." *Molina-Martinez*, 578 U. S., at ___ (slip op., at 15) (internal quotation marks omitted). "A resentencing is a brief event, normally taking less than a day and requiring the attendance of only the defendant, counsel, and court personnel." *United States* v. *Williams*, 399 F. 3d 450, 456 (CA2 2005).

Ensuring the accuracy of Guidelines determinations also serves the purpose of "providing certainty and fairness in

sentencing" on a greater scale. 28 U. S. C. §994(f); see also §991(b)(1)(B); *Booker*, 543 U. S., at 264. The Guidelines assist federal courts across the country in achieving uniformity and proportionality in sentencing. See *Rita*, 551 U. S., at 349. To realize those goals, it is important that sentencing proceedings actually reflect the nature of the offense and criminal history of the defendant, because the United States Sentencing Commission relies on data developed during sentencing proceedings, including information in the presentence investigation report, to determine whether revisions to the Guidelines are necessary. See *id.,* at 350. When sentences based on incorrect Guidelines ranges go uncorrected, the Commission's ability to make appropriate amendments is undermined.[2]

In broad strokes, the public legitimacy of our justice system relies on procedures that are "neutral, accurate, consistent, trustworthy, and fair," and that "provide opportunities for error correction." Bowers & Robinson, Perceptions of Fairness and Justice: The Shared Aims and Occasional Conflicts of Legitimacy and Moral Credibility, 47 Wake Forest L. Rev. 211, 215–216 (2012). In considering claims like Rosales-Mireles', then, "what reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?" *United States* v. *Sabillon-Umana*, 772 F. 3d 1328, 1333–1334 (CA10 2014) (Gorsuch, J.). In the context of a plain Guidelines error that affects substantial

––––––––––

[2] Similarly, the work of the Federal Bureau of Prisons is hindered by uncorrected Guidelines errors, because the Bureau relies, in part, on aspects of the Guidelines calculation in designating and classifying prisoners based on security and program needs. See Federal Bureau of Prisons, Program Statement No. P5100.08, Subject: Inmate Security Designation and Custody Classification, ch. 2, p. 1, ch. 4, p. 8, ch. 6, p. 5 (Sept. 12, 2006).

rights, that diminished view of the proceedings ordinarily will satisfy *Olano*'s fourth prong, as it does in this case.[3] As the Fifth Circuit itself concluded, there is a reasonable probability that, without correction of the Guidelines error, Rosales-Mireles will spend more time in prison than the District Court otherwise would have considered necessary. 850 F. 3d, at 249. That error was based on a mistake by the Probation Office, a mistake that can be remedied through a relatively inexpensive resentencing proceeding.

Of course, any exercise of discretion at the fourth prong of *Olano* inherently requires "a case-specific and fact-intensive" inquiry. *Puckett* v. *United States*, 556 U. S. 129, 142 (2009); see also *Young*, 470 U. S., at 16–17, n. 14. There may be instances where countervailing factors satisfy the court of appeals that the fairness, integrity, and public reputation of the proceedings will be preserved absent correction. But on the facts of this case, there are no such factors.[4]

—————

[3] The dissent maintains that "adhering to procedure" does not have "prime importance for purposes of the fourth prong" because the Court has held in some instances, where the error was not likely to have affected the substantive outcome, that the procedural error alone did not satisfy *Olano*'s fourth prong. *Post,* at 7 (opinion of THOMAS, J.) (citing *Johnson* v. *United States*, 520 U. S. 461 (1997); *United States* v. *Cotton*, 535 U. S. 625 (2002); *United States* v. *Marcus*, 560 U. S. 258 (2010)). The cases on which the dissent relies do not stand for the view, however, that procedural errors are unimportant or could never satisfy *Olano*'s fourth prong, especially where, as here, the defendant has shown a likelihood that the error affected the substantive outcome.

[4] As the dissent points out, *post,* at 8–9, a defendant bears the "burden to persuade the court that the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States* v. *Vonn*, 535 U. S. 55, 63 (2002) (internal quotation marks omitted). In the ordinary case, proof of a plain Guidelines error that affects the defendant's substantial rights is sufficient to meet that burden.

### III

The United States and the dissent agree with Rosales-Mireles that the Fifth Circuit's formulation of the standard for the exercise of discretion under Rule 52(b) "is an inaccurate description" of *Olano*'s fourth prong. Brief for United States 34; *post,* at 1, n. 1 (opinion of THOMAS, J.) ("[T]he Fifth Circuit's standard is higher than the one articulated in this Court's precedents"). They nevertheless maintain that Rosales-Mireles is not entitled to relief. We are unpersuaded, though a few points merit brief discussion.

First, the United States and the dissent caution that a grant of relief in Rosales-Mireles' case and in others like his would be inconsistent with the Court's statements that discretion under Rule 52(b) should be exercised "sparingly," *Jones* v. *United States*, 527 U. S. 373, 389 (1999), and reserved for "exceptional circumstances," *Atkinson,* 297 U. S., at 160. As an initial matter, *Jones* and the cases it relies on for the point that discretion should be exercised "sparingly" would have required additional jury proceedings on remand, either at resentencing or retrial. See 527 U. S., at 384, 389; see also *Young,* 470 U. S. 1; *United States* v. *Frady,* 456 U. S. 152 (1982); *Henderson* v. *Kibbe,* 431 U. S. 145 (1977). As we have explained, a decision remanding a case to the district court for resentencing on the basis of a Guidelines miscalculation is far less burdensome than a retrial, or other jury proceedings, and thus does not demand such a high degree of caution.

In any event, the circumstances surrounding Rosales-Mireles' case are exceptional within the meaning of the Court's precedent on plain-error review, as they are reasonably likely to have resulted in a longer prison sentence than necessary and there are no countervailing factors that otherwise further the fairness, integrity, or public reputation of judicial proceedings. The fact that, as a result of the Court's holding, most defendants in Rosales-

Mireles' situation will be eligible for relief under Rule 52(b) does not justify a decision that ignores the harmful effects of allowing the error to persist.

Second, the United States and the dissent assert that, because Rosales-Mireles' sentence falls within the corrected Guidelines range, the sentence is presumptively reasonable and "less likely to indicate a serious injury to the fairness, integrity, or public reputation of judicial proceedings." Brief for United States 20–21; see also *post,* at 10. A substantive reasonableness determination, however, is an entirely separate inquiry from whether an error warrants correction under plain-error review.

Before a court of appeals can consider the substantive reasonableness of a sentence, "[i]t must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *Gall*, 552 U. S., at 51. This makes eminent sense, for the district court is charged in the first instance with determining whether, taking all sentencing factors into consideration, including the correct Guidelines range, a sentence is "sufficient, but not greater than necessary." 18 U. S. C. §3553(a). If the district court is unable properly to undertake that inquiry because of an error in the Guidelines range, the resulting sentence no longer bears the reliability that would support a "presumption of reasonableness" on review. See *Gall*, 552 U. S., at 51. Likewise, regardless of its ultimate reasonableness, a sentence that lacks reliability because of unjust procedures may well undermine public perception of the proceedings. See Hollander-Blumoff, The Psychology of Procedural Justice in the Federal Courts, 63 Hastings L. J. 127, 132–134 (2011) (compilation of psychology research showing that the fairness of procedures influences perceptions of outcomes). The mere fact that Rosales-Mireles' sentence falls within the corrected Guidelines range does not preserve the fairness, integrity, or public

reputation of the proceedings.[5]

Third, the United States and the dissent contend that our decision "creates the very opportunity for 'sandbagging' that Rule 52(b) is supposed to prevent." *Post,* at 5; Brief for United States 17–18, 27. But that concern fails to account for the realities at play in sentencing proceedings. As this Court repeatedly has explained, "the Guidelines are 'the starting point for every sentencing calculation in the federal system,'" *Hughes* v. *United States*, 584 U. S. ___, ___ (2018) (slip op., at 9) (quoting *Peugh*, 569 U. S., at 542). It is hard to imagine that defense counsel would "deliberately forgo objection *now*" to a plain Guidelines error that would subject her client to a higher Guidelines range, "because [counsel] perceives some slightly expanded chance to argue for 'plain error' *later*." *Henderson* v. *United States*, 568 U. S. 266, 276 (2013) (emphasis in original). Even setting aside the conflict such a strategy would create with defense counsel's ethical obligations to represent her client vigorously and her duty of candor toward the court, any benefit from such a strategy is highly speculative. There is no guarantee that a court of appeals would agree to a remand, and no basis to believe that a district court would impose a lower sentence upon resentencing than the court would have imposed at the original sentencing proceedings had it been aware of the plain Guidelines error.

## IV

For the foregoing reasons, we conclude that the Fifth

---

[5] The dissent's discussion of Rosales-Mireles' criminal history, *post,* at 9–10, misses the point. That history is relevant to the District Court's determination of an appropriate sentence under 18 U. S. C. §3553(a). It does not help explain whether the plain procedural error in Rosales-Mireles' sentencing proceedings, which may have resulted in a longer sentence than is justified in light of that history, seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Circuit abused its discretion in applying an unduly burdensome articulation of *Olano*'s fourth prong and declining to remand Rosales-Mireles' case for resentencing. In the ordinary case, as here, the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings. The judgment of the Court of Appeals is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–9493

_____

## FLORENCIO ROSALES-MIRELES, PETITIONER *v.* UNITED STATES

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[June 18, 2018]

JUSTICE THOMAS, with whom JUSTICE ALITO joins, dissenting.

The Court holds that, "in the ordinary case," a miscalculation of the advisory Sentencing Guidelines range will "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Ante,* at 1. In other words, a defendant who does not alert the district court to a plain miscalculation of his Guidelines range—and is not happy with the sentence he receives—can raise the Guidelines error for the first time on appeal and ordinarily get another shot at a more favorable sentence. The Court's decision goes far beyond what was necessary to answer the question presented.[1] And it contravenes long-established principles of plain-error review. I respectfully dissent.

_____

[1] We granted certiorari to decide whether "the fourth prong of plain error review [demands], as the Fifth Circuit Court of Appeals required, that the error be one that 'would shock the conscience of the common man, serve as a powerful indictment against our system of justice, or seriously call into question the competence or integrity of the district judge.'" Pet. for Cert. i; 582 U. S. ___ (2017). Although I doubt it changed the outcome in any case, I agree that the Fifth Circuit's standard is higher than the one articulated in this Court's precedents— at least to the extent it requires an uncorrected error to "shock the conscience." See *ante,* at 5–7.

## I

Under Federal Rule of Criminal Procedure 52(b), "[a] plain error that affects substantial rights *may* be considered even though it was not brought to the court's attention." (Emphasis added.) The "point of the plain-error rule" is to "requir[e] defense counsel to be on his toes." *United States* v. *Vonn*, 535 U. S. 55, 73 (2002). Its demanding standard is meant to "encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get relief for unpreserved error." *United States* v. *Dominguez Benitez*, 542 U. S. 74, 82 (2004). If the standard were not stringent, there would be nothing "prevent[ing] a litigant from '"sandbagging"' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Puckett* v. *United States*, 556 U. S. 129, 134 (2009). Satisfying the plain-error standard "is difficult, 'as it should be.'" *Id.*, at 135.

This Court has held that Rule 52(b) is satisfied only when four requirements are met: "(1) there is 'an error,' (2) the error is 'plain,'" "(3) the error 'affect[s] substantial rights,'" and "(4) . . . 'the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."'" *Henderson* v. *United States*, 568 U. S. 266, 272 (2013). The fourth requirement—the one at issue here—is discretionary. *Ibid.* It should "be applied on a case-specific and fact-intensive basis." *Puckett*, *supra*, at 142. And it cannot be satisfied by "a plain error affecting substantial rights . . . , without more, . . . for otherwise the discretion afforded by Rule 52(b) would be illusory." *United States* v. *Olano*, 507 U. S. 725, 737 (1993). Instead, "only 'particularly egregious errors'" will meet the fourth prong's rigorous standard. *United States* v. *Young*, 470 U. S. 1, 15 (1985) (quoting *United States* v. *Frady*, 456 U. S. 152, 163 (1982)); see also *United States* v. *Atkinson*, 297 U. S. 157, 160 (1936) (explaining that courts should

provide relief under plain-error review only in "exceptional circumstances").

## II

The Court holds that Guidelines errors will "ordinar[ily]" satisfy the fourth prong of plain-error review. *Ante,* at 15. This result contravenes several established principles from our precedents.

To begin, the Court's decision is at odds with the principle that the fourth prong of plain-error review "be applied on a case-specific and fact-intensive basis." *Puckett, supra,* at 142. By holding that a Guidelines error "ordinarily will satisfy [the] fourth prong" absent "countervailing factors," *ante,* at 11, the Court creates what is essentially a rebuttable presumption that plain Guidelines errors satisfy Rule 52(b). And, based on the Court's application of it today, this presumption certainly must be difficult to rebut. The Court matter-of-factly asserts, in a single sentence with no analysis, that "there are no [countervailing] factors" in this case that counsel in favor of affirmance. *Ante,* at 11. It does so without even discussing the particular details of the defendant's crime, what happened at his sentencing, the reasoning that the District Court employed, the difference between the defendant's calculated Guidelines range and the correct one, or where his sentence fell relative to the correct Guidelines range. This approach is neither "case-specific" nor "fact-intensive." *Puckett, supra,* at 142. The Court candidly admits as much. See *ante,* at 11, n. 4. But this is exactly the kind of "'*per se* approach to plain-error review'" that we have consistently rejected. *Puckett, supra,* at 142.

The Court's rebuttable presumption also renders the fourth prong of plain-error review "illusory" in most Guidelines cases. *Olano, supra,* at 737. The Court expressly states that Guidelines errors will satisfy the fourth prong in "the ordinary case." *Ante,* at 15. But this Court

has repeatedly held that the fourth prong limits courts' discretion to "correct[ing] only 'particularly egregious errors.'" *Young*, *supra*, at 15. Because Rule 52(b) "'is not a run-of-the-mill remedy,'" *Frady*, *supra*, at 163, n. 14, relief should be granted "sparingly" in "'the rare case,'" *Jones* v. *United States*, 527 U. S. 373, 389 (1999), and only in "exceptional circumstances," *Atkinson*, *supra*, at 160. Today's decision turns that principle on its head by making relief available "in the ordinary case." *Ante,* at 1.

The Court asserts that relief under plain-error review need not be exceptional or rare when a remand would not require "additional jury proceedings." *Ante,* at 12. But that distinction has no basis in the text of Rule 52(b) or this Court's precedents. The only Rule 52(b) precedent that the Court cites for this assertion is *Molina-Martinez* v. *United States*, 578 U. S. ___, ___ (2016) (slip op., at 15). See *ante,* at 9. That decision rejected the Fifth Circuit's categorical rule requiring defendants to present "additional evidence" (beyond the Guidelines error itself) to prove prejudice under the third prong of plain-error review. See 578 U. S., at ___–___ (slip op., at 8–9). In dicta it suggested that, "in the ordinary case," the Guidelines error would be enough to satisfy the third prong's requirement that the error affect substantial rights. *Id.*, at ___ (slip op., at 15). And it rebuffed the Government's pragmatic "concern over the judicial resources needed" if Guidelines errors usually satisfy the third prong of plain-error review. *Id.*, at ___ (slip op., at 14). But *Molina-Martinez* did not discuss the fourth prong of plain-error review, which is at issue here and is an independent requirement, see *Olano*, *supra*, at 737. Nor did it relax the plain-error standard whenever reversal would not require "additional jury proceedings." *Ante,* at 12. Thus, *Molina-Martinez* gives no support to the Court's innovation.

Additionally, the Court's encouragement of remands based on ordinary Guidelines errors undermines "the

policies that underpin Rule 52(b)." *Dominguez Benitez*, 542 U. S., at 82. As explained, the plain-error standard encourages defendants to make timely objections in order to avoid sandbagging and to prevent wasteful reversals and remands. After today, however, most defendants who fail to object to a Guidelines error will be in virtually the same position as those who do. Today's decision, especially when combined with *Molina-Martinez*, means that plain Guidelines errors will satisfy Rule 52(b) in all but the unusual case. That creates the very opportunity for "sandbagging" that Rule 52(b) is supposed to prevent, *Puckett*, 556 U. S., at 134 (internal quotation marks omitted), by allowing a defendant who is aware of a mistake in the presentence report to "simply relax and wait to see if the sentence later str[ikes] him as satisfactory," *Vonn*, 535 U. S., at 73. Oddly, defendants who do not object to a Guidelines error could be in a better position than ones who do. An objection would give the district court a chance to explain why it would "arrive at the same sentencing conclusion" even if the defendant was correct about an alleged Guidelines error, which would "mak[e] clear" that the Guidelines error did not "adversely affect the defendant's ultimate sentence." *United States* v. *Sabillon-Umana*, 772 F. 3d 1328, 1334 (CA10 2014). Today's decision thus inverts Rule 52(b) by giving defendants an incentive to withhold timely objections and "'game' the system." *Puckett, supra*, at 140.

## III

Even if it were appropriate to create rebuttable presumptions under the fourth prong of plain-error review, the Court is wrong to conclude that the "ordinary" Guidelines error will "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Ante,* at 1. Whether a district court's failure to correctly calculate the advisory Guidelines range satisfies the fourth prong of

plain-error review will depend on the circumstances of each case. And the circumstances of this case prove the folly of the Court's presumption.

## A

The Court asserts that plain Guidelines errors must ordinarily be corrected to ensure that defendants do not "linger longer in federal prison than the law demands." *Ante,* at 10 (internal quotation marks omitted). But the Guidelines are not "law." They neither "define criminal offenses" nor "fix the permissible sentences for criminal offenses." *Beckles* v. *United States*, 580 U. S. ___, ___ (2017) (slip op., at 5) (emphasis deleted). Instead, they are purely "advisory" and "merely guide the district courts' discretion." *Id.,* at ___ (slip op., at 8). They provide advice about what sentencing range the Sentencing Commission believes is appropriate, "but they 'do not constrain'" district courts. *Ibid.* Accordingly, district courts are free to disagree with the Guidelines range, for reasons as simple as a policy disagreement with the Sentencing Commission. See *Pepper* v. *United States*, 562 U. S. 476, 501 (2011); 18 U. S. C. §3661. In fact, district courts commit reversible error if they "trea[t] the Guidelines as mandatory." *Gall* v. *United States*, 552 U. S. 38, 51 (2007). Although the Guidelines range is one of the factors that courts must consider at sentencing, 18 U. S. C. §3553(a), judges need not give the Guidelines range any particular weight. The only thing that "the law demands" is that a defendant's sentence be substantively reasonable and within the applicable statutory range. See *Jones* v. *United States*, 577 U. S. ___, ___–___ (2015) (Scalia, J., dissenting from denial of certiorari) (slip op., at 1–2); *Kimbrough* v. *United States*, 552 U. S. 85, 113–114 (2007) (Scalia, J., concurring).

The Court also justifies its presumption by repeatedly stressing the importance of procedural rules to the public's

perception of judicial proceedings. See *ante,* at 10 ("[T]he public legitimacy of our justice system relies on procedures"); *ante,* at 13 ("[U]njust procedures may well undermine public perception of [sentencing] proceedings"). It even cites a hodgepodge of psychological studies on procedural justice. *Ante*, at 13 (citing Hollander-Blumoff, The Psychology of Procedural Justice in the Federal Courts, 63 Hastings L. J. 127, 132–134 (2011) (Hollander-Blumoff)).

Putting aside the obvious problems with this research,[2] the Court contradicts our precedents by suggesting that adhering to procedure has prime importance for purposes of the fourth prong. This Court has repeatedly concluded that purely procedural errors—ones that likely did not affect the substantive outcome—do not satisfy the fourth prong of plain-error review. In *Johnson* v. *United States*, 520 U. S. 461 (1997), for example, the District Court failed to submit a materiality element to the jury, but this Court found that the fourth prong of plain-error review was not

---

[2] The article that the Court cites makes broad claims based on limited research. For instance, the article states that, "[w]hen people feel that they have received fair treatment, they are more likely to adhere to, accept, and feel satisfied with a given outcome, and to view the system that gave rise to that outcome as legitimate." Hollander-Blumoff, 134. But the only support it provides for that proposition is a telephone survey of a few hundred Chicago residents. See *id.,* at 134, n. 37 (citing T. Tyler, Why People Obey the Law 162 (2006)); see also *id.,* at 8–15 (explaining the study's methodology). The article also draws conclusions about the general importance of "procedural justice" in court, based on marginally relevant studies of noncourt settings such as "arbitration and mediation," interactions with "police officers" and "work supervisors," and "highly relational settings like the family." See Hollander-Blumoff 132–134. Crucially, none of this research has any bearing on the far more complicated question of "procedural justice" at issue here: whether it is presumptively unfair to penalize a defendant who fails to object to an error until appeal. The contemporaneous-objection rule, after all, is also a procedural rule that affects the fairness, integrity, and reputation of judicial proceedings.

satisfied because "the evidence supporting materiality was 'overwhelming.'" *Id.,* at 470. Reversal based on errors that have no actual "'effect on the judgment,'" this Court explained, "'encourages litigants to abuse the judicial process and bestirs the public to ridicule it.'" *Ibid.* (quoting R. Traynor, The Riddle of Harmless Error 50 (1970)). Similarly, in *United States* v. *Cotton,* 535 U. S. 624 (2002), the indictment failed to allege a fact that increased the statutory maximum, but the evidence of that fact "was 'overwhelming' and 'essentially uncontroverted.'" *Id.,* at 633. This Court held that reversing a defendant's sentence based on such a technicality would be "[t]he real threat . . . to the 'fairness, integrity, and public reputation of judicial proceedings.'" *Id.,* at 634. And in *United States* v. *Marcus,* 560 U. S. 258 (2010), the Second Circuit had held that an *ex post facto* error automatically satisfies the plain-error standard, "'no matter how unlikely'" it was that the jury actually convicted the defendant based on conduct that predated the statute of conviction. *Id.,* at 261 (emphasis deleted). In reversing that decision, this Court emphasized that, "in most circumstances, an error that does not affect the jury's verdict does not significantly impugn the 'fairness,' 'integrity,' or 'public reputation' of the judicial process." *Id.,* at 265–266. Thus, the Court is mistaken when it asserts that, because Guidelines errors are procedural mistakes, they are particularly likely to implicate the fourth prong of plain error.

### B

While the Court holds that the ordinary Guidelines error will satisfy the fourth prong of plain-error review, it admits that there can be "instances where countervailing factors" preclude defendants from satisfying the fourth prong. *Ante,* at 11. Because the Court does not question our existing plain-error precedents, see *ante,* at 12, the burden presumably remains on defendants to establish

that there are no such countervailing factors, and to persuade the appellate court that any countervailing factor identified by the Government is insufficient. See *Vonn*, 535 U. S., at 63 ("[A] defendant has the further burden to persuade the court that the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings" (internal quotation marks omitted)); *Dominguez Benitez*, 542 U. S., at 82 ("[T]he burden of establishing entitlement to relief for plain error is on the defendant claiming it"). But the Court does not explain what the defendant in this case has done to satisfy his burden.

If this case is an ordinary one, it highlights the folly of the Court's new rebuttable presumption. Petitioner Florencio Rosales-Mireles has a penchant for entering this country illegally and committing violent crimes—especially against women. A Mexican citizen, Rosales-Mireles entered the United States illegally in 1997. In 2002, he was convicted of assault for throwing his girlfriend to the floor of their apartment and dragging her outside by her hair. In 2009, he was convicted of aggravated assault with serious bodily injury and assault causing bodily injury to a family member.[3] His convictions stemmed from an altercation in which he attempted to stab one man and did stab another—once in the shoulder and twice in the chest. In January 2010, Rosales-Morales was removed to Mexico. But that same month he reentered the United States illegally. In 2015, he was convicted in Texas state court of assaulting his wife and 14-year-old son. During the altercation, Rosales-Mireles grabbed his wife by the hair and punched her in the face repeatedly.

---

[3] These assaults occurred in 2001, but Rosales-Mireles was not arrested for years—apparently because he was going by the name "Emilio Ruiz" at the time of the assaults. When Rosales-Mireles was eventually arrested in 2009, he had two outstanding warrants for other assaults of his wife.

Most recently, Rosales-Mireles pleaded guilty to illegal reentry.  See 8 U. S. C. §§1326(a), (b)(2).  The District Court sentenced him to 78 months in prison, which was within the Guidelines range he argued for on appeal.  See *ante,* at 4.  In choosing that sentence, the District Court emphasized that it was "the second time he's come to the courts for being here illegally"; that he had "attempted to hide in the United States with multiple aliases, birth dates, [and] Social Security numbers"; and that his "assaultive behavior" spanned from "at least . . . 2001 to 2015."  App. 20.

The sentence that Rosales-Mireles received was not only within both the improperly and properly calculated Guidelines ranges but also in the bottom half of both possible ranges.  See *ante,* at 4.  If the District Court had used the proper Guidelines range at his initial sentencing, then the sentence that it ultimately gave Rosales-Mireles would have been presumptively reasonable on appeal.  See 850 F. 3d 246, 250 (CA5 2017); *Rita* v. *United States*, 551 U. S. 338, 347 (2007).  And the Fifth Circuit determined that his sentence was in fact reasonable.  See 850 F. 3d, at 250–251.  Leaving that reasonable sentence in place would not "'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'"  *Young*, 470 U. S., at 15.  A sentence that is substantively reasonable is hardly the kind of "particularly egregious erro[r]" that warrants plain-error relief.  *Frady*, 456 U. S., at 163.

\*　　\*　　\*

Rule 52(b) strikes a "careful balance . . . between judicial efficiency and the redress of injustice."  *Puckett*, 556 U. S., at 135.  Because today's decision upsets that balance for scores of cases involving Guidelines errors, I respectfully dissent.