NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 1, 2022
Decided May 16, 2022

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-2114

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 16 CR 00570 |
| KEITH DAVIS, *Defendant-Appellant*. | Harry D. Leinenweber, *Judge*. |

**O R D E R**

Keith Davis was sentenced to 30 years' imprisonment and five years' supervised release after pleading guilty to kidnapping three separate women upon whom he inflicted extraordinary suffering. See 18 U.S.C. § 1201(a). On appeal Davis argues—and the government concedes—that the district court plainly erred when it calculated the applicable range of supervised release. Davis requests plenary resentencing, while the government argues that a limited remand is enough. We think that the government has the better of this point. The court made it clear that it would impose "certainly nothing less" than the 30-year prison term it chose. All that is needed is a fresh look at the

supervised release component of the sentence. We thus remand the case for that limited purpose.

**I**

Davis was a serial violent sex abuser. Over the span of about six weeks, on three separate occasions, he kidnapped and held a woman for his sexual gratification. He contacted each victim—K.B., N.A., and J.C.—over the internet and lured her to a secluded location by offering to pay for sex work. When each woman arrived, he refused to pay and restrained her from leaving. Davis cruelly beat, sexually assaulted, and threatened to kill K.B and N.A. He also viciously beat J.C., who escaped half-naked before Davis managed to rape her, too.

On May 19, 2019, Davis pleaded guilty to three counts of kidnapping, in violation of 18 U.S.C. § 1201(a)(1). Before sentencing, the Probation Office prepared a presentence investigation report ("PSR") that calculated Davis's total offense level at 42, and a criminal history category of III, for purposes of the Sentencing Guidelines. That led to a range of 360 months to life imprisonment as well as two to five years of supervised release per count. The Probation Office recommended 45 years' imprisonment and five years' supervised release.

At the sentencing hearing, the district court first heard from the government, which requested a 45-year prison sentence based on the horrific and strategic nature of Davis's crimes. The government then read a statement by K.B., one of Davis's victims, who was present by videoconference. K.B. described in haunting, excruciating detail how Davis's attack affected her and her family.

The court then discussed Davis's objections to the PSR with the attorneys. The court first confirmed that the guidelines range was 360 months to life imprisonment under either Davis's or the government's calculation and then addressed supervised release:

| | |
|---|---|
| The Court: | And supervised release of, I believe, five to life. |
| [Davis's Attorney]: | The government just said they recommended five years, Judge – |
| The Court: | Yes, but the range is five to life. Is that correct? I believe – |
| [The Prosecutor]: | The guidelines … for the supervised release is two years to five years per count. |
| The Court: | Okay. So that would be three counts, it would be six to 15, is that right, for supervised release? |

[The Prosecutor]: Pursuant to the guidelines provisions, that's correct.

The Court:              All right.

Neither Davis nor his attorney objected to that characterization of the supervised-release range. The court then heard Davis's remaining objections and agreed not to figure into the sentence Davis's pending sexual assault charge or the evidence that his DNA was linked to four other possible crimes.

Davis's attorney requested a maximum of 20 years' imprisonment, arguing that a 45-year prison term was a de facto life sentence. He emphasized that Davis had faced significant challenges in his life, such as exposure to violence at a young age and depression after his grandfather's death. Counsel also highlighted a mitigation specialist's report that Davis's difficult upbringing likely stunted his normative development. Finally, he pointed out that Davis was taking steps to better himself in jail.

Davis then spoke on his own behalf. He briefly apologized to the judge, his victims, and his family, then lamented the conditions he faced in jail and described how he was using his time productively in spite of those conditions. The court then asked if Davis could provide any explanation for his "almost inhuman conduct towards" his victims. He said no.

The court then considered the factors under 18 U.S.C. § 3553(a). With respect to the nature and circumstances of the offense, the court found that they were "almost unspeakable in their brutality" and that nothing in Davis's background "explain[ed] the nature of these particular crimes." The court emphasized a need for specific deterrence given the "almost unspeakable nature of the crime" so that "no woman … will be in such a situation again." But, the court explained, "I do not believe in putting somebody away for their entire lifetime." Thus, a 45-year sentence was too lengthy because Davis would not get out until "late middle-age, late age." Still, the court stated, "certainly nothing less than 360" months was warranted. It settled on a 30-year term (*i.e.* 360 months) followed by 5 years' supervised release.

Finally, the court considered Davis's objections to the conditions of release and resolved each objection favorably to Davis.

## II

The only issue on appeal is whether we should order a limited remand or plenary resentencing. Davis argues, and the government concedes, that the standard of review is plain error. We agree with that assessment: Davis did not object to the district court's calculation despite an opportunity to do so, but he did not affirmatively agree to it either. Because there was no obvious strategic justification for remaining quiet, the omission is

best viewed as a forfeiture, not a waiver. *United States v. Wylie*, 991 F.3d 861, 863 (7th Cir. 2021). Plain-error review requires Davis to show a clear or obvious error that affected his substantial rights. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018). If he makes that showing, then we should reverse if not doing so "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1905 (citations omitted).

We start with the question of error. As the parties recognize, the district court plainly erred when it determined that Davis's three supervised release terms could run consecutively. Each count of conviction carried a statutory maximum of five years' supervised release and a recommended guidelines term of two to five years' supervised release. 18 U.S.C. § 3583(b)(1); U.S.S.G. § 5D1.1(a)(1). By statute, those terms cannot run consecutively. 18 U.S.C. § 3624(e); *United States v. Danser*, 270 F.3d 451, 454 (7th Cir. 2001). Nonetheless, the district court calculated, and the government erroneously confirmed the correctness of, a six- to 15-year guidelines range by combining the three terms. Miscalculating Davis's guidelines range was a "significant procedural error" because the Guidelines play a central role in sentencing, insofar as they anchor the court's discretion. *Molina-Martinez v. United States*, 578 U.S. 189, 198–99 (2016) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Therefore, the use of an incorrect, higher guidelines range prejudiced Davis's substantial rights. *Id.* at 201; *Wylie*, 991 F.3d at 864. Finally, an error in the duration of custody affects the public legitimacy of the judiciary, and so we should correct it. *Rosales-Mireles*, 138 S. Ct. at 1908; *Wylie*, 991 F.3d at 864.

Turning to the scope of our remand, we acknowledge that we often have chosen a full resentencing when procedural errors have occurred. *United States v. Mobley*, 833 F.3d 797, 801 (7th Cir. 2016). Incarceration and supervised release are interrelated parts of a sentence, and those parts may be balanced against one another. *United States v. Downs*, 784 F.3d 1180, 1182 (7th Cir. 2015). We thus generally do not assume that when one part of a sentence changes, others will be unaffected. *Id.*

Davis argues that the district court adopted a scaled approach in his case by offsetting a "lengthy 360-month below-Guidelines sentence" with a "lengthy term of supervised release." As a result, he contends, a full resentencing is required. See *Downs*, 784 F.3d at 1182. The government counters that a limited remand is appropriate if we are confident that the district court "would impose the same term of imprisonment" even if the supervised-release term changes. *United States v. Manyfield*, 961 F.3d 993, 997 (7th Cir. 2020). When a court justifies its chosen prison sentence and its remarks at sentencing convince us that other aspects of the sentence would not change, a limited remand is advisable. *Wylie*, 991 F.3d at 865.

A limited remand, as in *Wylie* and *Manyfield*, is the right answer here. Davis's argument rests on a faulty premise. There is no indication that the district court intended to impose a "lengthy" term of supervised release to counterbalance the prison sentence (which Davis also calls "lengthy"). Both terms were comparatively lenient. First, the 30-year prison term was the bottom of the guidelines range and well below the 45 years that the probation office recommended and the government requested—not to mention the top end, life. Second, the court chose a term below the erroneous range of six to 15 years. Five years' supervised release is not especially "lengthy" even if it is the top of the properly calculated range. Because the court imposed comparatively short terms of imprisonment *and* supervised release, Davis's invocation of the scaled approach rings hollow.

After considering all the evidence and arguments, the court amply justified the 30-year sentence in a way that made no reference to the supervised release component. It emphasized the importance of specific deterrence given the nature of the crimes and the need to ensure that no woman would ever be in a similar situation with Davis again. To that end, the court said it would impose "certainly nothing less than" a 30-year term of incarceration. But the court also indicated that it was not interested in imposing a longer sentence because "I do not believe in putting somebody away for their entire lifetime."

For the sake of completeness, we add finally that there is no need here for the district court to revisit the conditions of supervised release. See *Wylie*, 991 F.3d at 865. The court addressed each of Davis's objections and resolved them largely in his favor, and Davis has not contested any condition on appeal.

We therefore VACATE the sentence in part and REMAND only for reconsideration of the length of Davis's supervised release.