Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us. Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 15, 2020

**2020 CO 58**

**No. 18SC789, *Sullivan v. People*—§ 18-1-409(1), C.R.S. (2019)—Incorrect Sentencing Range—Direct Appeal—Plea Proviso—"Propriety of the Sentence"—"Propriety of the Sentencing Proceeding."**

The supreme court holds that "the propriety of the sentence," as that phrase is used in section 18-1-409(1), C.R.S. (2019), does not encompass the manner in which the sentence was imposed (i.e., the propriety of the sentencing proceeding). Because the defendant's appeal concerns the manner in which his sentence was imposed, the court concludes that it is not barred by section 18-1-409(1), even though his sentence fell within the range agreed upon by the parties pursuant to their plea agreement. In so doing, the supreme court reaffirms its interpretation of the statutory phrase "the propriety of the sentence" in *People v. Malacara*, 606 P.2d 1300 (Colo. 1980). Because the court of appeals dismissed the defendant's appeal, its judgment is reversed.

**2020 CO 58**

**Supreme Court Case No. 18SC789**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA1001

**Petitioner:**

Christopher David Sullivan,

**v.**

**Respondent:**

The People of the State of Colorado.

**Judgment Reversed**
*en banc*
June 15, 2020

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Jessica A. Pitts, Deputy Public Defender
    *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Katharine Gillespie, Senior Assistant Attorney General
    *Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.
**JUSTICE BOATRIGHT** dissents, and **CHIEF JUSTICE COATS** and **JUSTICE HART** join in the dissent.

¶1 Every defendant convicted of a felony and not sentenced to death in Colorado has a right to "one appellate review of *the propriety of the sentence*." § 18-1-409(1), C.R.S. (2019) (emphasis added). This rule has an exception, which is commonly (and fittingly) known in legal parlance as the "plea proviso": "[I]f the sentence is within a range agreed upon by the parties pursuant to a plea agreement, the defendant shall not have the right of appellate review of *the propriety of the sentence*." *Id.* (emphasis added). The appeal before us turns on the scope of the phrase "the propriety of the sentence" in section 18-1-409(1).

¶2 A division of the court of appeals dismissed Christopher David Sullivan's appeal, finding that it was barred by the plea proviso. In so doing, it rejected his contention that the plea proviso did not apply because his appeal involved the manner in which the sentence was imposed, not "the propriety of the sentence." The division was of the view that an appeal related to the manner in which the sentence was imposed is an appeal regarding the propriety of the sentence.

¶3 So, does "the propriety of the sentence," as that phrase is used in section 18-1-409(1), encompass the manner in which the sentence was imposed? The last time we had occasion to discuss this question, President Jimmy Carter was still in the Oval Office and our nation remained awestruck after witnessing the "Miracle on Ice" in the Winter Olympics in Lake Placid, New York. *See People v. Malacara*, 606 P.2d 1300 (Colo. 1980). Of course, a lot of water has flowed under the bridge

since. In fact, the plea proviso had not even seen the light of day when we penned *Malacara*. Today, after a four-decade hiatus, we revisit our analysis of section 18-1-409(1) in *Malacara*.

¶4 Adhering to our rationale in *Malacara*, we hold that "the propriety of the sentence," as that phrase is used in the plea proviso, does not comprehend the manner in which the sentence was imposed (i.e., the propriety of the *sentencing proceeding*). Because Sullivan's appeal concerns the manner in which his sentence was imposed, it is not barred by the plea proviso. Therefore, we reverse the division's judgment.

## I. Facts and Procedural History

¶5 Following a routine traffic stop in the Lookout Mountain area, Sullivan evaded police. Brandishing an AR-15 rifle during the lengthy chase, which was partially captured on helicopter video by a local news station, he went on a crime spree, stealing and attempting to steal multiple vehicles (including through carjacking). In the process, Sullivan wrecked two cars. He also burglarized a home to steal an SUV, which he drove through the garage door before getting it stuck in terrain. The incident ended when Sullivan, who was on foot, was finally arrested while wielding his AR-15 and attempting to carjack yet another vehicle on I-70. The People later charged him with forty-two substantive offenses.

3

¶6     Pursuant to a plea agreement, Sullivan pled guilty to forty substantive charges, including first degree burglary, aggravated robbery, aggravated motor vehicle theft, menacing with a deadly weapon, first degree assault, resisting arrest, and possession of a weapon by a previous offender.   The district court subsequently sentenced him to seventy-seven years in prison, which fell within the seventy-to-eighty-five-year range in the plea agreement.   During the sentencing hearing, though, the court misstated the statutory sentencing range on count 15 (aggravated motor vehicle theft in the first degree), a class 4 felony, as three to twelve years instead of two to six years.[1]  No one caught the error.

¶7     Sullivan appealed his sentence on count 15.  He maintained that in ordering him to serve a four-year prison term on that count, the district court had chosen the low end of what it believed was the applicable sentencing range (three to twelve years), but had in fact unwittingly sentenced him to the midpoint of the correct sentencing range (two to six years).  Had the court been aware of the correct

_____

[1] The plea agreement, the district court's advisement at the providency hearing, and the prosecution's sentencing memorandum all included the correct sentencing range for count 15 (two to six years).  Sullivan's sentencing memorandum, on the other hand, inaccurately stated that the sentencing range for that count was four to twelve years.

sentencing range, posited Sullivan, it would have imposed a sentence in the low end of that range—i.e., two or even three years instead of four years.[2]

¶8     A unanimous division of the court of appeals dismissed Sullivan's appeal in an unpublished opinion. Relying in large part on *People v. Bloom*, 251 P.3d 482, 483 (Colo. App. 2010), and *People v. Lassek*, 122 P.3d 1029, 1031–34 (Colo. App. 2005), the division determined that the phrase "the propriety of the sentence" in section 18-1-409(1) includes within its ambit the manner in which the sentence was imposed (or the propriety of the sentencing proceeding). The division then concluded that the plea proviso "precludes appellate review of a challenge to a legal sentence falling within a stipulated range, other than an allegation of a constitutional flaw in the sentencing proceedings." Because Sullivan raised a nonconstitutional appellate claim regarding the propriety of the sentencing proceeding as to count 15, and because the legal sentence on that count fell within

---

[2] Apparently believing that the correct sentencing range on count 15 was four to twelve years, Sullivan asked for a four-year sentence. That's the sentence the court imposed. Acknowledging, at least impliedly, that the misstatement in Sullivan's sentencing memorandum was inadvertent, not strategic, the People do not assert that this appeal is foreclosed by the invited error doctrine, which binds a party to "the consequences of his . . . acts" and precludes him from "complaining on appeal of an error that he . . . invited or injected into the case." *People v. Rediger*, 2018 CO 32, ¶ 34, 416 P.3d 893, 901.

the range set forth in the plea agreement, the division held that his appeal was barred by the plea proviso.

¶9 Sullivan then sought review in our court, and we granted his petition for certiorari.[3]

## II. Standard of Review

¶10 The parties assert, and we agree, that whether the plea proviso bars Sullivan's appeal is a question of statutory construction. Questions of statutory construction are legal questions subject to de novo review. *People v. Brown*, 2019 CO 50, ¶ 11, 442 P.3d 428, 431–32.

## III. Analysis

¶11 It is undisputed that Sullivan's sentence on count 15 fell within the range agreed upon by the parties in the plea agreement. The parties further stipulate that Sullivan's challenge is to the manner in which his sentence was imposed and that his claim does not implicate a constitutional flaw. Finally, the parties do not contest that the plea proviso bars appellate review of the propriety of Sullivan's

---

[3] We granted certiorari on the following issue:

> Whether section 18-1-409(1), C.R.S. (2018), precludes nonconstitutional challenges to the manner in which a legal felony sentence within the stipulated range from a plea agreement was imposed.

sentence. The dispositive question is whether a nonconstitutional claim regarding the manner in which the sentence was imposed comes within the purview of the phrase "the propriety of the sentence" in the plea proviso. If it does, Sullivan's appeal is barred; if it doesn't, it isn't.

¶12 Section 18-1-409, "Appellate review of sentence for a felony," provides in subsection (1):

> When a sentence is imposed upon any person following a conviction of any felony, other than a class 1 felony in which a death sentence is automatically reviewed . . . , the person convicted shall have the right to one appellate review of *the propriety of the sentence*, having regard to the nature of the offense, the character of the offender, and the public interest, and the manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based; except that, if the sentence is within a range agreed upon by the parties pursuant to a plea agreement, the defendant shall not have the right of appellate review of *the propriety of the sentence*. The procedures employed in the review shall be provided by supreme court rule.

(Emphases added.) Although we have never directly addressed the question we confront today, we have previously interpreted the phrase "the propriety of the sentence" in section 18-1-409(1). *See Malacara*, 606 P.2d at 1302–03. Granted, that was before the plea proviso was on the books. But, as we explain later, the timing of the plea proviso's nascency in relation to our earlier discussion of "the propriety of the sentence" in *Malacara* makes Sullivan's position all the more compelling.

¶13 Predictably, the starting line for our analysis is *Malacara*'s examination of section 18-1-409(1). There, we recognized that "the propriety of the sentence" is

but one of "two fundamental and distinct issues" a defendant can raise under section 18-1-409(1) when he seeks review of his sentence. *Id.* at 1302. The other, we said, is "the manner in which the sentence was imposed" or what we termed "the propriety of the sentencing proceeding." *Id.* at 1303. This differentiation, we noted, is reflected in the language of section 18-1-409(1). *See id.* at 1302–03. We explained that the first issue, "the propriety of the sentence," implicates "the intrinsic fairness or appropriateness of the sentence itself taking into account 'the nature of the offense, the character of the offender, and the public interest.'" *Id.* (quoting § 18-1-409(1)). The second issue—"the manner in which the sentence was imposed" (or "the propriety of the sentencing proceeding")—we continued, involves those "extrinsic factors and procedures which affect the determination of the sentence," including "the sufficiency and accuracy of the information on which the sentence was based." *Id.* at 1303 (citing § 18-1-409(1)).

¶14    Thus, in *Malacara*, we understood section 18-1-409(1) as granting a defendant convicted of a felony, other than a class 1 felony on which a death sentence was imposed, the right to one appellate review of: (1) the propriety of the sentence, and (2) the manner in which the sentence was imposed (or the propriety of the sentencing proceeding). *See id.* at 1302–03. Below is the pertinent statutory language as we distilled it in *Malacara*—to highlight the distinction we made, we insert numbers [1] and [2] and use different fonts:

8

> [T]he person convicted shall have the right to one appellate review of **[1] the propriety of the sentence, having regard to the nature of the offense, the character of the offender, and the public interest,** and *[2] the manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based.*

§ 18-1-409(1) (emphases added). This interpretation comports with the cardinal rule of statutory construction: "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). As we have acknowledged, when the language of a statute is clear and unambiguous, we give effect to its plain meaning and look no further.[4] *Lewis v. Taylor*, 2016 CO 48, ¶ 20, 375 P.3d 1205, 1209.

¶15    Significantly, we observed in *Malacara* that "[n]either the legislature nor this court [had] ever intended to bar review of the propriety of the sentencing proceeding, i.e., those factors beyond the intrinsic fairness of the sentence, which

---

[4] The People's reliance on *People v. Dunlap*, 975 P.2d 723 (Colo. 1999), is misplaced. *Dunlap* dealt with a different statutory provision, section 16-11-103(6)(a), C.R.S. (1998) (now section 18-1.3-1201(6)(a), C.R.S. (2019)). 975 P.2d at 764. Section 18-1.3-1201(6)(a) applies exclusively to death sentences, the only sentences to which section 18-1-409(1) does not apply. Though sections 18-1.3-1201(6)(a) and 18-1-409(1) are very similar, they are not identical. Unsurprisingly, *Dunlap*, a death penalty case, did not mention, much less discuss, section 18-1-409(1) or our construction of it in *Malacara*. Nor did *Dunlap* seek to ascertain the scope of the phrase "the propriety of the sentence" in section 18-1-409(1).

may have affected the determination of the sentence imposed." 606 P.2d at 1303. We echo that declaration here.

¶16    We appreciate that the legislature did not breathe life into the plea proviso until 1999, almost two decades after our decision in *Malacara*. *See* Ch. 215, sec. 21, § 18-1-409(1), 1999 Colo. Sess. Laws 792, 799. And we are conscious that the legislature repeated the phrase "the propriety of the sentence" in the plea proviso: "except that, if the sentence is within a range agreed upon by the parties pursuant to a plea agreement, the defendant shall not have the right of appellate review of *the propriety of the sentence*." § 18-1-409(1) (emphasis added). But neither circumstance alters our conclusion today. To the contrary, each buttresses it.

¶17    We can conceive of no basis to justify ascribing the phrase "the propriety of the sentence" a different meaning in the plea proviso than the meaning it has, pursuant to *Malacara*, elsewhere in the same statutory provision. Moreover, when the General Assembly used "the propriety of the sentence" in the plea proviso, it is presumed to have acted with full knowledge of our interpretation of the phrase in *Malacara*. *See Dawson v. Reider*, 872 P.2d 212, 221 (Colo. 1994) ("[I]t is presumed that the General Assembly acts with full knowledge of existing decisional and statutory law . . . ."). And where, as here, there is no express intent to repeal or abrogate existing law—namely, *Malacara*—we do not presume that the legislature meant to do so. *Id.* Actually, in such a situation, we presume that the legislature

10

"accepted and ratified [our] prior judicial construction" of the statute. *People v. Swain*, 959 P.2d 426, 430–31 (Colo. 1998); *see also Diehl v. Weiser*, 2019 CO 70, ¶ 25, 444 P.3d 313, 319 (when the legislature amends a statute, it is presumed to be "aware of, and approve[] of, case law interpreting that statute"). Hence, we conclude that by using the phrase "the propriety of the sentence" in the plea proviso, the legislature adopted our construction of the term in *Malacara* and did not seek to curtail claims raised on direct appeal contesting the propriety of the sentencing proceeding—whether they be of the constitutional or nonconstitutional variety.

¶18 Because the decisions of the court of appeals in *Bloom* and *Lassek* are inconsistent with this determination, we now overrule them. *Bloom* followed *Lassek* without analysis, *see Bloom*, 251 P.3d at 483, and *Lassek* improperly circumscribed our observation in *Malacara* that section 18-1-409(1), as it read at the time, did not preclude challenges to the propriety of the sentencing proceeding, *see Lassek*, 122 P.3d at 1031, 1033. According to *Lassek*, since the cases we cited in *Malacara* apparently "involve[d] constitutional issues," we meant to communicate that the only challenges to the propriety of the sentencing proceeding that may be brought under section 18-1-409(1) are constitutional ones. *Lassek*, 122 P.3d at 1033. But nothing in *Malacara* corroborates this view.

11

¶19 The People insist, though, that our decision in *Juhl v. People*, 172 P.3d 896 (Colo. 2007) aligns with *Lassek*'s narrow reading of *Malacara*. We disagree.

¶20 In *Juhl*, we reasoned that whether the trial court had imposed an illegal sentence that was "statutorily prohibited" was "not a matter of the intrinsic fairness or appropriateness of the sentence" and was thus not barred by the plea proviso. 172 P.3d at 901. But there is an ocean of difference between what we said there and concluding, as the People do here, that a claim like Sullivan's can only get past the plea proviso if it alleges an illegality or other constitutional flaw. Read in context, *Juhl* actually undercuts the People's position. As we do in this case, in *Juhl*, we borrowed from *Malacara*'s pre-plea-proviso interpretation of "the propriety of the sentence" to interpret the same phrase in the plea proviso. *Id.*

¶21 We are equally unpersuaded by the People's invitation to sidestep *Malacara* via obiter dictum.[5] To be sure, the appeal in *Malacara* arose in a different context than the one involved here—in *Malacara*, the defendant appealed the district court's denial of his Crim. P. 35 motion for reduction of sentence following

---

[5] Obiter dictum, Latin for "something said in passing," is defined by *Black's Law Dictionary* as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." *Obiter Dictum*, Black's Law Dictionary (11th ed. 2019).

affirmance of his convictions. 606 P.2d at 1301. Even so, our decision there hinged on our construction of section 18-1-409(1) in general and the phrase "the propriety of the sentence" specifically. *Id.* at 1302–03. We declined to review the merits of the defendant's claim because we ruled that his appeal was related to "the propriety of the sentence" and, given the procedural circumstances present, he was "only permitted to seek judicial review of the propriety of the sentencing proceeding and not [the propriety of] the sentence." *Id.* at 1303. Nowhere in *Malacara* did we limit the distinction we drew between "the propriety of the sentence" and "the propriety of the sentencing proceeding" to appeals from Rule 35 postconviction motions. Nor did we say or even insinuate that a claim regarding the manner in which the sentence was imposed must first be raised in a Rule 35 postconviction motion.

¶22     Rather than obiter dictum, the more apposite principle here is stare decisis.[6] We are called upon in this appeal to interpret the phrase "the propriety of the sentence" in section 18-1-409(1). Invoking the doctrine of stare decisis, we stand by our construction of that phrase in *Malacara*.

---

[6] Of course, under the doctrine of stare decisis (a Latin term meaning "to stand by things decided"), courts are required to "follow earlier judicial decisions when the same points arise again in litigation." *Stare Decisis*, Black's Law Dictionary (11th ed. 2019).

¶23 Finally, we would be remiss if we failed to note that adopting the People's reading of section 18-1-409(1) would risk the "unnecessary deprivation of liberty" and would "undermine[] the fairness, integrity, or public reputation of judicial proceedings" because of the role the district court plays in determining the applicable sentencing range and the relative ease with which the claim of error at issue may be resolved. *Rosales-Mireles v. United States*, __ U.S. __, 138 S. Ct. 1897, 1908 (2018) (making a similar declaration in the context of a plain sentencing guidelines error). In *Rosales-Mireles*, after the defendant pled guilty, the sentencing court relied on a miscalculation in the presentence investigation report that resulted in a higher criminal history score and yielded a sentencing range of seventy-seven to ninety-six months, instead of the correct sentencing range of seventy to eighty-seven months. *Id.* at 1905. Though no one noticed the error in the trial court and the defendant's seventy-eight-month sentence fell within the correct sentencing range, the Supreme Court concluded that the error had to be corrected. *Id.* at 1911.

¶24 The *Rosales-Mireles* Court reminded us that "the public legitimacy of our justice system relies on procedures that are 'neutral, accurate, consistent, trustworthy, and fair,' and that 'provide opportunities for error correction.'" *Id.* at 1908 (quoting Bowers & Robinson, *Perceptions of Fairness and Justice: The Shared Aims and Occasional Conflicts of Legitimacy and Moral Credibility*, 47 Wake Forest L.

14

Rev. 211, 215–16 (2012)). We pose the same question here that the Court asked there, "what reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in . . . prison than the law demands?" *Id.* (quoting *United States v. Sabillon-Umana*, 772 F.3d 1328, 1333–34 (10th Cir. 2014)).

¶25 Simply recognizing that Sullivan may be entitled to a potential reduction of his sentence without actually affording him an opportunity to seek that reduction does little more than pay lip service to the principles espoused in *Rosales-Mireles*. Nor is it appropriate to force Sullivan to take his chances with a Rule 35 postconviction motion. Sullivan must be allowed to raise on direct appeal the error that occurred during his sentencing proceeding. That's what Colorado law requires. And that's what justice demands.

¶26 In sum, we continue on the course charted by *Malacara* and hold that the plea proviso does not preclude an appeal related to the manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which the sentence was based. Therefore, though Sullivan's sentence on count

fell within the range included in his plea agreement, his appeal is not barred by the plea proviso.[7]

## IV. Conclusion

¶27     We conclude that the division erred in dismissing Sullivan's appeal. Accordingly, we reverse.  We remand the matter to the court of appeals so that it may consider the merits of Sullivan's claim.

**JUSTICE BOATRIGHT** dissents, and **CHIEF JUSTICE COATS** and **JUSTICE HART** join in the dissent.

---

[7] We are aware that C.A.R. 4(c) contains language that's similar, but not identical, to that found in section 18-1-409(1).  Because the narrow question we agreed to review and the parties briefed is limited to the statutory provision, we do not analyze the rule.

16

JUSTICE BOATRIGHT, dissenting.

¶28 The General Assembly decided that when a defendant receives a sentence that he agreed to, he does not have the right to appeal that sentence. That was the rule until today, when the majority created an exception by, in my view, adding words to the plain language of section 18-1-409(1), C.R.S. (2019). That statute clearly and unambiguously provides that when the court imposes a sentence that conforms with the parties' plea agreement, the defendant may not appeal the propriety of his sentence, which includes the manner in which the sentence was imposed. § 18-1-409(1). Despite this unambiguous mandate, the majority concludes that the statute actually creates two distinct types of appeals, with different rights of appeal. The majority determined that those two types of appeals are those addressing (1) the propriety of the sentence and (2) the propriety of the sentencing proceeding. The General Assembly, however, did not draw such a distinction. Rather, the statute broadly defines "the propriety of the sentence" to mean both the actual terms of the sentence that was imposed and the way in which the sentencing hearing was conducted. Because, in my opinion, the majority's interpretation does not comport with the plain language of section 18-1-409(1), I respectfully dissent.

¶29 To briefly summarize the facts, the defendant went on a violent rampage that resulted in approximately forty charges, ranging from aggravated robbery to

1

menacing with a deadly weapon. The defendant ultimately pleaded guilty to more than thirty charges. Importantly here, the plea agreement provided for an aggregate sentencing range of seventy to eighty-five years in the custody of the Department of Corrections. Because of the complexity of fashioning an appropriate sentence under these circumstances, the trial court ordered counsel to provide a sentencing memorandum. Defense counsel's sentencing memorandum incorrectly listed count 15, the charge at issue here, as a class 3 felony, with the applicable sentencing range of four to twelve years, and then requested that the defendant be sentenced to four years on that count. During the sentencing hearing, the court, not surprisingly, also misstated that count 15 was a class 3 felony, carrying a statutory sentencing range of three to twelve years. The court then imposed a four-year prison term on count 15, just as defense counsel requested. And in conformity with the plea agreement, the court sentenced the defendant to a total of seventy-seven years in prison on all counts, which was well within the agreed upon range of seventy to eighty-five years. The defendant appealed the sentence, in particular, the court's characterization of count 15 as a class 3 felony. The court of appeals dismissed his appeal, citing to section 18-1-409(1), which provides that a defendant does not have a right to appellate review when the sentence he appeals is one that conforms to a plea agreement he

2

made. Now, the majority is reversing that dismissal. I disagree because the majority's interpretation of the statute does not comport with its plain language.

¶30 To begin, section 18-1-409(1) makes it clear that a defendant cannot appeal the propriety of a sentence that was imposed within the agreed upon range, including the manner in which that sentence was imposed:

> When a sentence is imposed upon any person following a conviction of any felony, . . . the person convicted shall have the right to one appellate review *of the propriety of the sentence*, having regard to the nature of the offense, the character of the offender, and the public interest, and *the manner in which the sentence was imposed*, including the sufficiency and accuracy of the information on which it was based; except that, *if the sentence is within a range agreed upon* by the parties pursuant to a plea agreement, *the defendant shall not have the right of appellate review of the propriety of the sentence.*

(Emphases added.) Unlike the majority, I do not read the statute to create two distinct categories of appealable issues with different appellate rights. And unpacking the statute demonstrates why it does not. The statute first recognizes a person's right to appeal felony sentences. The statute then directs the appellate court to first look at the actual sentence imposed and instructs that in assessing that sentence, the court should consider (1) the nature of the offense; (2) the character of the offender; and (3) the public interest. Then the court should consider the manner in which that sentence was imposed. In assessing how the hearing was conducted, the appellate court should consider the sufficiency and accuracy of the information on which the sentence was based. As a result, the

3

statute logically treats the propriety of the sentence as both the result and the process. The statute then limits a defendant's ability to challenge both types of issues if the defendant and the prosecutor reached an agreement about the sentencing range and the defendant does, in fact, receive a sentence within that range. In other words, if the defendant receives the benefit of the bargain that he agreed to, then he cannot appeal the sentence. That makes sense.

¶31 If we are to presume that the legislature "says . . . what it means and means . . . what it says," maj. op ¶ 14 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)), then, in my view, the majority should not read into the statute a distinction that is not there. In so doing, I believe that the majority has rendered section 18-1-409(1)'s common-sense exception to the general right to appeal all but obsolete and will needlessly increase meritless appeals. Many jurisdictions allow for, and in fact rely extensively on, stipulated sentences. When a defendant reaches a valid agreement with the prosecutor about his sentence, and he then gets the benefit of his bargain, it makes sense that he should not be permitted to appeal the result of what he agreed to in the first place. Plus, why would the legislature allow an appeal of the sentencing process but not of the actual sentence imposed? Doesn't that render the limitation on appealing the actual sentence superfluous?

¶32 The facts of this case demonstrate how "the manner in which the sentence is imposed" is included within the "propriety" of the sentence. Sullivan argues

4

that the district court imposed a sentence at the bottom of the range for a class 3 felony but at the middle of the range for a class 4 felony. Sullivan argues that the court would have imposed a sentence at the bottom of the range for a class 4 felony if it had not mischaracterized the charge at issue. Even if Sullivan is correct, this is not a claim that the sentence imposed violated the Constitution or statutory law. It is a claim that the judge should have exercised her discretion, within the agreed upon range, to impose a slightly lower sentence. That is a challenge to the propriety of the sentence. And when the legislature amended section 18-1-409(1) to prohibit challenges to the propriety of a sentence that falls within an agreed-upon range, this is precisely the type of claim it sought to prohibit.

¶33    What is more, the majority's trip down memory lane to interpret section 18-1-409(1) is unwarranted. Despite never concluding that the statute is ambiguous, the majority turns to case law, specifically *People v. Malacara*, 606 P.2d 1300 (Colo. 1980), for help in "defining" the phrase "the propriety of the sentence." The majority gets ahead of itself. The "starting line" in any attempt to construe a statute should always be the language of the statute. *See People v. Opana*, 2017 CO 56, ¶ 11, 395 P.3d 757, 760 ("If a statute is clear and unambiguous, . . . it must simply be applied as written."). And even if it was proper to look to case law, the majority's reliance on *Malacara* is misplaced. *Malacara* was decided nearly twenty years before the legislature amended section 18-1-409(1) to include the appeal

5

exception. By looking at *Malacara* as its starting point, the majority has it backwards. *Malacara* does not define the amendment to the statute. Rather, the amendment to the statute abrogates *Malacara*. Indeed, the legislature could have adopted *Malacara*'s distinction between the propriety of the sentence and the propriety of the sentencing proceeding, but it did not.

¶34 Although I dissent, I do recognize that the trial court misstated the statutory sentencing range on count 15, a class 4 felony, as three to twelve years instead of two to six years. Even considering the fact that the aggregate sentence imposed here is seventy-seven years, a potential reduction of the defendant's sentence by up to two years is important. And I agree with the majority's cry for justice and its emphasis on protecting "the public legitimacy of our justice system." Maj. op. ¶ 24 (quoting *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018)). In my view, however, there is a way to ensure justice without creating an exception that swallows the limitation created by the statute. Even if he cannot appeal his sentence, the defendant is not left without a remedy. His remedy just does not lie in an appeal. Instead, Crim. P. 35(c)(2) provides him one avenue through which he could seek relief. Under Rule 35(c)(2), a defendant may bring a postconviction claim for ineffective assistance of counsel. That is relevant here because, prior to sentencing, it was defense counsel that submitted a memorandum outlining the defendant's aggregate sentencing request. In this memorandum, *defense counsel*

6

incorrectly listed count 15 as a class 3 felony, with the applicable sentencing range of four to twelve years, and then requested that the defendant be sentenced to four years for this count. That is exactly what the trial court did. Because defense counsel injected this error, the defendant could bring a postconviction claim under Rule 35(c)(2) to seek resentencing on count 15.

¶35 Alternatively, the defendant could seek relief under Crim. P. 35(b). Under Rule 35(b), the defendant could file a postconviction claim seeking a reduction in his sentence within eighteen weeks after the sentence was imposed.[1] This would allow the defendant to explore whether the correction to the level of the felony and the corresponding reduction of the sentencing range would impact his sentence.[2] These two avenues, Rule 35(b) and Rule 35(c)(2), are where the defendant's remedy lies, not in an appeal. They provide the necessary "opportunit[y] for error correction." Maj. op. ¶ 24 (quoting *Rosales-Mireles*, 138 S. Ct. at 1908).

---

[1] In this instance, a Rule 35(b) motion would still be available because the defendant may file a postconviction claim within eighteen weeks after the conclusion of his direct appeal.

[2] Pursuing relief by a Rule 35(b) motion would provide resolution much more quickly than an appeal and gives the defendant the exact same relief. Both avenues end in the trial court with the judge exercising her discretion to determine if the misstatement about the level of the felony and the sentencing range impacted the sentence.

¶36 Notwithstanding the need to correct the error that occurred at sentencing, because the plain language of the statute does not allow a defendant to appeal the manner in which his sentence was imposed when that sentence is within a range agreed upon in a plea agreement, I would affirm the court of appeals' dismissal of the appeal. Accordingly, I respectfully dissent.

I am authorized to state that CHIEF JUSTICE COATS and JUSTICE HART join in this dissent.