18CA2095 Peo v Garcia 12-02-2021 COLORADO COURT OF APPEALS Court of Appeals No. 18CA2095 Morgan County District Court No. 17CR161 Honorable Kevin L. Hoyer, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Freddy Torres Garcia, Defendant-Appellant. SENTENCE AFFIRMED Division VI Opinion by JUDGE WELLING Fox and Johnson, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced December 2, 2021 Philip J. Weiser, Attorney General, Ryan A. Crane, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Eric A. Samler, Alternate Defense Counsel, Hollis A. Whitson, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant 
 1 ¶ 1 Defendant, Freddy Torres Garcia, appeals the sentence the district court imposed on his guilty plea to two counts of tampering with a deceased human body. We affirm. I. Background ¶ 2 Garcia participated in criminal acts related to the deaths of Destiny McMinn and Carlos Santos Macias between March and April 2017. Garcia was seventeen years old at the time of the alleged crimes. The prosecution charged Garcia in district court with two counts of first degree murder, class 1 felonies, and two counts of tampering with a deceased human body, class 3 felonies. ¶ 3 Garcia filed a motion to have the case transferred to the juvenile court. The district court conducted the reverse-transfer hearing along with the preliminary hearing and proof evident/presumption great hearing over five days. ¶ 4 After the hearing, the district court denied Garcia’s motion to transfer the case to juvenile court, so the case remained in district court. ¶ 5 Three months after the court’s ruling on the reverse-transfer motion, the parties reached a plea agreement. The plea agreement provided that in exchange for the dismissal of the murder charges, 
 2 Garcia would plead guilty to the tampering counts. Under the plea agreement, the sentence was “open to the court.” The agreement, however, specified that Garcia wasn’t eligible for a sentence to probation or to community corrections. The agreement provided that the court could sentence Garcia to either: (1) the Department of Youth Corrections for up to six years, or (2) the Colorado Department of Corrections (DOC) for a minimum of four years and up to twenty-four years. ¶ 6 Following a two-day sentencing hearing, the district court imposed the maximum twenty-four-year sentence contemplated by the parties’ plea agreement. II. Analysis ¶ 7 Garcia raises two arguments on appeal. First, Garcia contends that his sentence is illegal because the district court didn’t have jurisdiction to impose an adult sentence. Second, Garcia argues that the district court abused its discretion in imposing a twenty-four-year sentence because, when imposing the sentence, the district court improperly considered his alleged conduct related to the dismissed murder charges. ¶ 8 We aren’t persuaded by either contention. 
 3 A. District Court Jurisdiction ¶ 9 A contention that a sentence is illegal implicates the subject matter jurisdiction of the sentencing court. Downing v. People, 895 P.2d 1046, 1050 (Colo. 1995). Because a lack of subject matter jurisdiction deprives a court of its authority to hear a case or enter a judgment, it is an issue that may be raised at any time. Currier v. Sutherland, 218 P.3d 709, 714 (Colo. 2009); see C.R.C.P. 12(h)(3). ¶ 10 At issue here is whether, after the court granted the prosecution’s motion to dismiss the murder charges, the district court retained jurisdiction under section 19-2-517, C.R.S. 2019,
1 to sentence Garcia for the remaining class 3 felonies, which wouldn’t, standing alone, have been eligible for direct file in district court. This is a question of statutory interpretation. We review questions 1 At the time of sentencing, the operative statute was section 19-2-
517, C.R.S. 2019. Sections 19-2-511 to 19-2-518 were repealed and relocated by Ch. 136, sec. 1, 2021 Colo. Sess. Laws 557, effective October 1, 2021. Former sections 19-2-517 and 19-2-518, relating to direct filing and transfers, respectively, were relocated to sections 19-2.5-801 and 19-2.5-802. The language of former section 19-2-517(6)(a)-(c) is unchanged but is now located in section 19-2.5-801(5)(a)-(c). We cite to the 2019 version of these statutes. 
 4 of law, including issues of statutory interpretation, de novo. People v. Sandoval, 2016 COA 57, ¶ 14. ¶ 11 Our primary goal when interpreting a statute is to give effect to the intent of the General Assembly. Poudre Sch. Dist. R-1 v. Stanczyk, 2021 CO 57, ¶ 13. We look first to the statutory text at issue, applying its plain and ordinary meaning while ensuring that we are giving “consistent, harmonious, and sensible effect” to every part of the statutory scheme. Bd. of Cnty. Comm’rs v. Colo. Dep’t of Pub. Health & Env’t, 2021 CO 43, ¶ 17. In doing so, we mustn’t “add or subtract words from a statute.” Smokebrush Found. v. City of Colorado Springs, 2018 CO 10, ¶ 18. ¶ 12 Our first task is thus to determine whether the text at issue is susceptible of one or more plain-meaning interpretations. See Bd. of Cnty. Comm’rs, ¶¶ 18-26. A statute is ambiguous “when it is reasonably susceptible of multiple interpretations.” Elder v. Williams, 2020 CO 88, ¶ 18. The mere fact, however, that parties advance opposing plain-meaning interpretations doesn’t establish that the text is ambiguous. Klun v. Klun, 2019 CO 46, ¶ 18. If the text is unambiguous, our analysis is done; “we apply it as written — 
 5 venturing no further.” Blooming Terrace No. 1, LLC v. KH Blake St., LLC, 2019 CO 58, ¶ 11. 1. The Direct File Statute ¶ 13 While section 19-2-104(1)(a), (7), C.R.S. 2019, confers exclusive jurisdiction on the juvenile court over cases concerning juveniles between ten and eighteen years of age, the statute recognizes an exception where section 19-2-517 applies. § 19-2-
104(2); see also Sandoval, ¶¶ 16-17. Before turning to the merits of Garcia’s argument, we offer an overview of the direct file statute. ¶ 14 Direct filing is authorized when the prosecution charges a juvenile with committing an offense enumerated in the direct file statute. Sandoval, ¶ 17; see § 19-2-517. Section 19-2-517(1) specifies the circumstances in which a district attorney may directly file charges in district court against a juvenile. As relevant here, this includes when a juvenile “is sixteen years of age or older at the time of the commission of the alleged offense” and “[i]s alleged to have committed a class 1 or class 2 felony.” § 19-2-517(1)(a)(I). ¶ 15 When directly filing enumerated charges in district court, the district attorney can also file unenumerated charges. Flakes v. People, 153 P.3d 427, 434 (Colo. 2007) (“[T]he district court 
 6 exercises ancillary jurisdiction to permit the filing of unenumerated charges” against a juvenile in district court.). ¶ 16 Subsection (6) of section 19-2-517 provides for sentencing of a juvenile who is convicted of an offense directly filed in district court: (a) If a juvenile is convicted following the filing of criminal charges by information or indictment in the district court pursuant to this section, the district judge shall sentence the juvenile either: (I) As an adult; except that a juvenile is excluded from the mandatory minimum sentencing provisions in section 18-1.3-406, C.R.S., unless the juvenile is convicted of a class 1 felony or a sex offense that is subject to part 9 of article 1.3 of title 18, C.R.S.; or (II) To the youthful offender system in the department of corrections in accordance with section 18-1.3-407, C.R.S.; except that a juvenile shall be ineligible for sentencing to the youthful offender system if the juvenile is convicted of: (A) A class 1 felony; (B) Any sexual offense described in section 18-
6-301 or 18-6-302, C.R.S., or part 4 of article 3 of title 18, C.R.S.; or (C) A second or subsequent offense, if the juvenile received a sentence to the department of corrections or to the youthful offender system for the prior offense. . . . . 
 7 (b) The district court judge may sentence a juvenile pursuant to the provisions of this article if the juvenile is convicted of a lesser included or nonenumerated felony offense for which criminal charges could not have been originally filed by information or indictment in the district court pursuant to this section. If the juvenile is convicted of only a misdemeanor offense or misdemeanor offenses, the court shall adjudicate the juvenile a delinquent and sentence the juvenile pursuant to this article. (c) If a juvenile is convicted of an offense that is not eligible for district court jurisdiction under either this section or section 19-2-518, the juvenile shall be remanded to juvenile court. § 19-2-517(6)(a)-(c). ¶ 17 Thus, the direct file statute creates four separate sentencing tracks based on the severity of the offense of which the juvenile is convicted after a direct filing in district court. These tracks govern whether the district court or the juvenile court have jurisdiction to sentence the juvenile. These tracks also govern the type of sentence — adult or juvenile — the sentencing court may impose. ¶ 18 First, under section 19-2-517(6)(a) the district court shall impose the sentence when the juvenile is convicted of an offense that was eligible for direct file pursuant to section 19-2-517(1). This includes class 1 or 2 felonies and sexual assaults that are 
 8 crimes of violence, among other offenses. Under this track, the district court has the discretion to impose either an adult sentence or a sentence to the youthful offender system. This discretion, however, is subject to a limitation: for class 1 felonies and certain sexual offenses, the court must impose an adult sentence. § 19-2-
517(6)(a)(II)(A)-(C). ¶ 19 Second, under the first clause of section 19-2-517(6)(b), if the juvenile is convicted of a lesser included offense — or an unenumerated felony offense that was filed along with a charge that was eligible for direct file, even if, standing alone, that unenumerated felony offense couldn’t have been directly filed — the district court must sentence the juvenile, but retains discretion to impose either an adult or juvenile sentence. ¶ 20 Third, under the second clause of section 19-2-517(6)(b), if the juvenile is only convicted of a misdemeanor, the district court must impose a juvenile sentence. ¶ 21 Finally, under section 19-2-517(6)(c), if the juvenile is convicted of an offense that isn’t covered by any of the foregoing subsections, such as a petty offense or traffic offense, then the 
 9 district court doesn’t retain jurisdiction, but must remand the juvenile for sentencing in juvenile court. ¶ 22 Accordingly, subsection (6)(c) only applies to situations that aren’t explicitly covered by the preceding provisions of section 19-2-
517. 2. Application ¶ 23 Here, because Garcia was seventeen years old at the time of the offenses and the original charges included two class 1 felonies, the prosecution properly filed charges against him directly in district court pursuant to section 19-2-517(1)(a)(I). Neither party disputes this. ¶ 24 At issue is the proper interpretation of subsection (6)(c) of the direct file statute. § 19-2-517(6)(c) (“If a juvenile is convicted of an offense that is not eligible for district court jurisdiction under either this section or [the transfer statute], the juvenile shall be remanded to juvenile court.”) (emphasis added). ¶ 25 When the parties entered the plea agreement, the prosecution moved to dismiss the only charges that made Garcia’s case eligible for direct filing in district court. Garcia argues that when the district court granted the prosecution’s motion to dismiss the 
 10 class 1 felony charges, it lost jurisdiction over his case. Garcia emphasizes that the charges for which he was convicted under the plea agreement — two counts of tampering with a deceased human body, class 3 felonies — aren’t, standing alone, eligible for direct filing under the statute. Therefore, Garcia argues that section 19-2-
517(6)(c) required the district court to remand him for sentencing in juvenile court. We disagree. ¶ 26 The provisions of subsection (6)(b) are controlling under the circumstances of this case. Specifically, the first clause of subsection (6)(b) vests the district court with jurisdiction to impose the sentence in this case. Subsection (6)(b) provides as follows: The district court judge may sentence a juvenile pursuant to the provisions of this article if the juvenile is convicted of a lesser included or nonenumerated felony offense for which criminal charges could not have been originally filed by information or indictment in the district court pursuant to this section. . . . § 19-2-517(6)(b) (emphasis added). ¶ 27 Garcia pleaded guilty to two unenumerated felonies. It’s true that, standing alone, the prosecution couldn’t have filed these unenumerated class 3 tampering charges directly in district court. The district court, however, had ancillary jurisdiction over the 
 11 tampering charges because Garcia was also “alleged to have committed a class 1 . . . felony.” See § 19-2-517(1)(a)(I). Based on the plain reading of section 19-2-517(6)(b), notwithstanding the dismissal of the murder charges, the district court retained jurisdiction to sentence Garcia for these unenumerated felonies. Moreover, the district court had discretion to impose a juvenile sentence or an adult sentence. This analysis disposes Garcia’s jurisdictional challenge. ¶ 28 Garcia’s urged interpretation of the statute would render the first clause of subsection (6)(b) meaningless. We reject an interpretation that requires us to subtract words from the statute. See Smokebrush, ¶ 18. Although we acknowledge that subsection (6)(c) does provide for remand to the juvenile court when no other provision of section 19-2-517 applies, we conclude that in Garcia’s case, subsection (6)(b) is directly on point. Therefore, mandatory remand to juvenile court wasn’t triggered here. ¶ 29 Garcia’s urged interpretation would also create a glaring anomaly, as the statute would require the court to remand a juvenile convicted of an unenumerated felony but retain jurisdiction 
 12 to sentence the juvenile if he or she is only convicted of a misdemeanor. ¶ 30 Instead, we conclude that the first clause of subsection (6)(b) gives the “district court judge” discretion to impose a juvenile sentence or an adult sentence. Consistent with this — and in consideration of the reduced severity of the offense — the second clause of subsection (6)(b) requires the district court to impose a juvenile sentence for a misdemeanor offense. The fact that the second clause specifies that the court “shall” impose the sentence (rather than remand to juvenile court) indicates that the same requirement extends to sentencing for unenumerated felonies; however, in the latter case, the district court “may” impose either a juvenile or an adult sentence. § 19-2-517(6)(b). ¶ 31 This interpretation doesn’t render (6)(c) superfluous. Rather, it appears that the General Assembly added this subsection to give unequivocal instruction to courts when all the provisions of the direct file statute and the transfer statute are inapplicable. For example, subsection (6)(c) applies when a direct-filed juvenile is convicted of only a petty offense or a traffic offense that was charged along with the original eligible offenses. Likewise, the 
 13 subsection would be triggered when, as in Sandoval, the parties and the trial court proceed through trial and sentencing on the misunderstanding that one of the original counts qualified for direct filing when, in fact, none of them did. See Sandoval, ¶¶ 18-19. ¶ 32 Therefore, the district court retained jurisdiction to impose an adult sentence on Garcia pursuant to section 19-2-517(6)(b) even though the prosecution dismissed the class 1 felony charges. Because we conclude that the district court had jurisdiction under the provisions of the direct file statute, we need not, and therefore don’t, reach the issue of whether Garcia would have been subject to transfer pursuant to section 19-2-518, C.R.S. 2019, or what the appropriate remedy would be in the event that the district court didn’t have jurisdiction to impose an adult sentence. B. Consideration of Dismissed Charges at Sentencing ¶ 33 Next, Garcia contends that the district court abused its discretion by imposing the maximum sentence for his class 3 felony convictions after considering conduct related to the dismissed murder charges. Garcia argues that his sentence amounts to punishment for failure to admit to offenses that were dismissed and that were never proved. We disagree. 
 14 1. Additional Facts ¶ 34 At the two-day sentencing hearing, both parties introduced extensive testimony from their respective witnesses. The district court heard testimony from Jon Holt, the lead investigator, indicating that the text messages and the location history on the phones involved in discovery didn’t support Garcia’s accounts. Garcia claimed that unknown masked men surprised him and his codefendant, seized their phones for several hours, and ultimately told them to dispose of the victims’ bodies. ¶ 35 Investigator Holt indicated that Garcia’s version of events wasn’t corroborated by other evidence in the case. The presentence investigation (PSI) report — on which the court partially relied at sentencing — offers a coherent summary of evidence uncovered by investigators, which suggests Garcia’s involvement in the murders: A timeline was comprised showing a correlation between [codefendant, Garcia, and codefendant’s girlfriend], Elizabeth, as well as the Intoxalock Logs. These messages begin at 5:57 PM on March 22, 2017 and continue until 1:34 PM on March 27, 2017. This timeline displays a series of events and conversations linking [codefendant] and [Garcia] to the disappearance of [victim Macias] and [victim McMinn] and the burning and disposal of their 
 15 bodies afterwards. These specific timeline entries are attached to the report. Based on the information obtained in the investigation, it appeared that [codefendant] lured [victim Macias] to the shop [on] highway 34 to complete a drug transaction. When [victim Macias] arrived, [codefendant] lured [victim Macias] to a back room where [Garcia] was waiting. It is very likely that [victim Macias] and [victim McMinn] were killed at that location and moved to an unknown location. Messages indicate that the shop had been cleaned and that the bodies were burned a few days later at an unknown location. ¶ 36 The PSI report supplemented the testimony the district court heard from Lieutenant Jon Horton, the lead detective, at the reverse-transfer hearing. At both the sentencing and reverse-
transfer hearings, the defense exercised its right to cross-examine the prosecution’s witnesses, and to elicit lengthy testimony from defense witnesses. ¶ 37 Based on the foregoing, the court found an “abundance of reliable and trustworthy evidence indicating that [Garcia] was involved and voluntarily participated in the events that led to the murders.” The court further found that Garcia was “attempting to conceal his involvement or the involvement of his known accomplices” in the murders. The court stated: 
 16 The cell phone records, the text messages between [Garcia and codefendant], the Google searches, the GPS coordinates from the interlocking device on [victim Macias’] car, this scientific and electronic evidence doesn’t lie. These are reliable, indisputable, and incontrovertible evidence of what actually happened. This evidence is not even remotely consistent with the statements that [Garcia] made during the proffer. After considering all of the evidence that’s been presented and the factors that I am to consider when imposing a sentence, including . . . the imposition of a sentence relative to the seriousness of the offense, the need to prevent crime and to promote respect of the law by providing an effective deterrent to others likely to commit similar offenses, and to promote acceptance of responsibility and accountability by offenders, and healing for victims in the community, I conclude that a sentence to the Department of Corrections is called for in this case. 2. Standard of Review ¶ 38 Sentencing is by its nature a discretionary function. People v. Beatty, 80 P.3d 847, 855 (Colo. App. 2003). The trial court is accorded wide latitude in its sentencing decisions. Id. We won’t reverse a district court’s sentencing decision unless the court abused its discretion. Lopez v. People, 113 P.3d 713, 720 (Colo. 2005). To constitute an abuse of discretion, a sentence must be 
 17 manifestly arbitrary, unreasonable, or unfair. People v. Herrera, 2014 COA 20, ¶ 16. Likewise, a lower court abuses its discretion if its discretionary decision is based on an erroneous understanding or application of the law. Margerum v. People, 2019 CO 100, ¶ 9. ¶ 39 A party generally can’t challenge the propriety or fairness of a sentence that’s within the range agreed upon by the parties in the plea agreement. § 18-1-409, C.R.S. 2021. An appellate court may, however, review the manner in which the trial court imposed the sentence, including the sufficiency and accuracy of the evidence on which the district court based the sentence. Sullivan v. People, 2020 CO 58, ¶ 26. 3. Discussion ¶ 40 First, Garcia wasn’t acquitted of the murder charges. Rather, the prosecution dismissed those charges as part of a plea agreement. Under Colorado law, it is proper for a sentencing court to consider charges that are dismissed as part of a plea agreement. ¶ 41 Second, Garcia’s argument rests on the faulty premise that his sentence was based on evidence of the murder charges that was introduced solely at the preliminary hearing. Garcia claims that this evidence wasn’t subjected to adversarial testing. The record 
 18 contradicts this. We conclude that the district court did find the evidence of the dismissed murder charges by a preponderance of the evidence. ¶ 42 Finally, Garcia’s reliance on Graham v. Florida, 560 U.S. 48 (2010), and Miller v. Alabama, 567 U.S. 460 (2012), is misplaced because the court didn’t sentence him to life imprisonment without the possibility of parole. a. Charges Dismissed as Part of Plea Agreement ¶ 43 In People v. Lowery, 642 P.2d 515 (Colo. 1982), the Colorado Supreme Court dealt specifically with sentencing following a guilty plea. In Lowery, the prosecution filed several charges against the defendant as part of three separate cases pending in district court. Id. at 516. Pursuant to plea negotiations in one of the cases, the defendant pleaded guilty to one count of aggravated robbery, a class 3 felony. Id. After the entry of the plea, the court dismissed the other criminal charges in all of the defendant’s other cases. Id. ¶ 44 When imposing the sentence, the district court considered, among other things, the PSI reports and the “other charges which had been filed in the district court, but which were dismissed upon entry of the plea bargain.” Id. at 518. In upholding the sentence, 
 19 the supreme court ruled that “[w]ithin the court’s broad discretion to sentence one convicted of a crime, it is proper for the judge to consider aggravating or mitigating information, including other charges dismissed at the time of the plea.” Id. (emphasis added). ¶ 45 Here, even if the court hadn’t found the evidence relating to the dismissed murder charges by a preponderance of the evidence, the district court properly considered this evidence. Further, the twenty-four-year sentence is within the permissible range for two class 3 felonies. § 18-1.3-401(1)(a)(V)(A), C.R.S. 2021; § 18-1-
408(3), C.R.S. 2021. Moreover, the plea agreement explicitly contemplated a sentence of up to twenty-four years. Therefore, we find no abuse of discretion in the imposition of the sentence here. b. Preponderance of the Evidence and Acquittal ¶ 46 Although it isn’t a prerequisite under Colorado law, the district court did find the evidence relating to Garcia’s involvement in the dismissed murder charges by a preponderance of the evidence. Thus, even when tested according to the requirements for sentences based on consideration of acquitted charges, we find that the district court didn’t abuse its discretion. 
 20 ¶ 47 Sentencing courts may consider both uncharged and acquitted conduct that has been proved by a preponderance of the evidence in determining the appropriate sentence. United States v. Watts, 519 U.S. 148, 157 (1997); see also Beatty, 80 P.3d at 856 (a trial court may consider a wide range of evidence in determining a defendant’s sentence, including facts relating to charges of which the defendant has been acquitted); see also People v. Phong Le, 74 P.3d 431 (Colo. App. 2003) (determining that where defendant was acquitted of murder, but convicted of other crimes regarding the same victim, sentencing court properly considered defendant’s conduct that set events in motion that led to the victim’s death). ¶ 48 Garcia claims that the evidence of the dismissed murder charges was only presented at the preliminary hearing. From that premise, Garcia argues that preliminary hearings are limited to matters necessary to a determination of probable cause, rather than a consideration of the probability of conviction at the ensuing trial. Hunter v. Dist. Ct., 190 Colo. 48, 51, 543 P.2d 1265, 1267 (1975). ¶ 49 Probable cause exists if there is a “fair probability” that the conduct occurred. See People v. Polander, 41 P.3d 698, 703 (Colo. 2001). By contrast, a fact is established by a preponderance of the 
 21 evidence when, upon consideration of all the evidence, the existence of that fact is more probable than its nonexistence. People v. Garner, 806 P.2d 366, 370 (Colo. 1991). Garcia maintains, therefore, that the district court erred in considering the evidence of his conduct related to the murder charges. ¶ 50 The district court, however, didn’t only rely on evidence presented by the prosecution at the preliminary hearing. Rather, the district court considered evidence from the preliminary hearing as well as several other sources, including (1) the two-day sentencing hearing; (2) the reverse-transfer hearing, which the court combined with the preliminary hearing and proof evident/presumption great hearing, all of which spanned a total of five days; (3) the PSI report; and (4) Garcia’s videotaped proffer. Thus, the district court was justified in saying at sentencing that it had “a very thorough understanding of the facts of this case, similar to having conducted a trial.” i. Appropriate Sentencing Factors and Murder Charges ¶ 51 As an initial matter, the record supports a finding that the district court didn’t sentence Garcia for having committed the murders. Rather, in imposing its sentence, the district court 
 22 considered evidence of Garcia’s involvement in the events that led to the murders through the prism of two entirely appropriate sentencing factors. ¶ 52 Under section 18-1-102.5, C.R.S. 2021, a defendant’s sentence should serve, among others, two key purposes: (1) exacting proportionate punishment in relation to the seriousness of the offense; and (2) promoting the acceptance of responsibility and accountability by offenders. See § 18-1-102.5(1)(a), (f). ¶ 53 At sentencing the court looked to overwhelming evidence that suggested that Garcia hadn’t been truthful about his involvement in the serious criminal activity at issue in this case. The court stated: There is an abundance of reliable and trustworthy evidence in this case indicating that [Garcia] was involved and voluntarily participated in the events that led to the murders of [victim Macias] and [victim McMinn]. I consider his attempts to destroy and conceal the bodies of [the victims] to be serious in this case, as he was attempting to conceal his involvement or the involvement of his known accomplices in these horrible crimes. Mr. [Garcia] did not want the bodies to be found because he did not want to be charged with murder. As part of the plea agreement that [Garcia] entered into, he agreed to a proffer agreement, which required a full, honest, and complete 
 23 disclosure to law enforcement of the events surrounding the incident. I’ve reviewed the 3-
and-a-half-hour videotape proffer. I expected, and I hoped, that [Garcia] would accept responsibility for these crimes and demonstrate some remorse. Instead, he was not truthful. He did not accept any responsibility for these crimes. And he showed little remorse. ¶ 54 While, at first glance, it may appear that the district court simply sentenced Garcia for having committed the murders, we conclude that the court’s determination was more nuanced. ¶ 55 First, the above-quoted passage indicates that the court looked to the general severity of the case. This applies to both the tampering charges and the fact that they occurred in the context of a murder case. As opposed to tampering with, for example, electronic records or inanimate property, Garcia pleaded guilty to the considerably more severe and odious crime of tampering with a deceased human body. Similarly, the court looked to evidence that Garcia committed the tampering offenses to conceal involvement in activity related to first degree murder, the most serious offense with which the prosecution could have charged Garcia. ¶ 56 Second, the court looked to the fact that, based on all the evidence, it was clear that Garcia hadn’t been honest about the 
 24 extent of his involvement in the criminal activity. Thus, the court noted a concerning lack of remorse, which necessarily indicated that Garcia had not accepted responsibility for his actions. ¶ 57 Accordingly, Garcia’s assertion that the district court punished him for the dismissed murder charges is inaccurate. Rather, in crafting a sentence that was proportionate to the severity of the criminal activity at issue, the court considered appropriate factors. ii. Adversarial Testing of Evidence ¶ 58 As detailed above, we note that apart from the preliminary hearing, the parties subjected the evidence introduced at the reverse-transfer hearing and two-day sentencing hearing to extensive adversarial testing. In basing the sentence, in part, on this “scientific and electronic” evidence that “doesn’t lie” and was “reliable, indisputable, and incontrovertible,” the court — without explicitly stating so — does appear to have found Garcia’s involvement in the conduct that led to the murders by at least a preponderance of the evidence. ¶ 59 The district court in Phong Le made a similar determination that was upheld by a division of this court. See 74 P.3d at 435. In 
 25 Phong Le, the jury acquitted the defendant of murder, but found him guilty of, among other offenses, burglary, theft, and conspiracy to commit those offenses. Id. at 433. The sentencing court imposed three consecutive maximum sentences totaling thirty-six years. Id. at 434. At sentencing, the court stated, despite the murder acquittals, “but for the actions of this individual, those individuals would not have died, would not have been killed.” Id. Just as here, the defendant in Phong Le argued that the sentences were improper because the court’s comments reflected that the court was “in effect, sentencing him for murders of which he had been acquitted.” Id. ¶ 60 A division of this court rejected that argument, holding as follows: [E]ven if we were to agree with defendant that his sentence is based to some extent on conduct that formed the basis of a charge of which he was acquitted . . . the sentencing court’s consideration of defendant’s role in the crimes that later led to the murders was not tantamount to punishing him for crimes of which he was acquitted. 
 26 Id. at 435. Rather, the court continued, “the [district court] properly evaluated the overall circumstances of the crimes of which he was convicted.” Id. (emphasis added). ¶ 61 In sum, the district court here found by a preponderance of the evidence that Garcia was involved in the conduct that led to the murders. The evidence of the dismissed murder charges was subjected to adversarial testing. Accordingly, the district court properly considered the dismissed charges in evaluating the overall circumstances of the crimes forming the basis of conviction. The district court’s sentencing determinations weren’t manifestly arbitrary, unreasonable, or unfair. c. Constitutional Claim ¶ 62 Finally, Garcia contends that the district court’s sentence runs afoul of the Eighth Amendment to the United States Constitution as articulated in Graham v. Florida and Miller v. Alabama. We disagree. ¶ 63 The central precept of the Court’s rulings in Graham and Miller is that juveniles are constitutionally different from adults for sentencing purposes, such that they are categorically excluded from certain punishments. See Miller, 567 U.S. at 471. In Graham, the 
 27 Court held that the Eighth Amendment prohibits a sentence of life imprisonment without the possibility of parole for juvenile offenders convicted of non-homicide offenses. 560 U.S. at 82. ¶ 64 Similarly, in Miller, the Court ruled that a judge must have the opportunity to consider mitigating circumstances before imposing the “harshest possible penalty for juveniles.” 567 U.S. at 489. The district court in that case had also sentenced a fourteen-year-old convicted of murder to a term of life imprisonment without the possibility of parole. Id. at 465. The rulings in Graham and Miller don’t apply to Garcia’s case because the court didn’t sentence Garcia to a term of life without parole. ¶ 65 “If the sentence is within the range required by law, is based on appropriate considerations as reflected in the record, and is factually supported by the circumstances of the case, an appellate court must uphold the sentence.” People v. Fuller, 791 P.2d 702, 708 (Colo. 1990). ¶ 66 Here, as provided for in the plea agreement, the district court sentenced Garcia to twenty-four years in the DOC. The record shows that the district court, as it was required to do, considered and balanced appropriate factors, including the nature and severity 
 28 of the offenses, the defendant’s character and rehabilitation potential, the development of respect for the law, deterrence of crime, and protection of the public. See id. Further, the court addressed Garcia directly, saying that “it’s very possible that you will be paroled before your 30th birthday. You’re going to be able to marry, raise a family, and hopefully become a productive member of the community.” ¶ 67 In sum, Graham and Miller are inapposite and the district court’s sentence was based on appropriate considerations. Therefore, Garcia’s sentence doesn’t violate constitutional standards. III. Conclusion ¶ 68 For the reasons set forth above, the district court’s sentence is affirmed. JUDGE FOX and JUDGE JOHNSON concur.