[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14199
Non-Argument Calendar
_____

D.C. Docket No. 1:19-cr-00040-TFM-N-1

UNITED STATES OF AMERICA,

                                            Plaintiff - Appellee,

versus

PATRICK R. KELLY,

                                            Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(August 18, 2020)

Before JORDAN, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

Patrick Ryan Kelly appeals his criminal sentence, arguing that it was both procedurally and substantively unreasonable. He contends that the sentence was procedurally unreasonable because the district court impermissibly considered rehabilitation when it imposed the sentence and because it failed to adequately account for the Sentencing Guidelines in its analysis. He argues that the sentence was substantively unreasonable for largely the same reasons and asserts that the district court's errors were not harmless. We disagree, and therefore affirm.

## I

In May of 2019, Mr. Kelly pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), without the benefit of a plea agreement. A PSI prepared in anticipation of his sentencing hearing determined that the applicable advisory guideline range, based on his total offense level and criminal history category, was 110 to 137 months. But because the violation to which he had pleaded guilty carried a statutory maximum sentence of ten years, the PSI concluded that Mr. Kelly's guideline range was 110 to 120 months. Mr. Kelly submitted a sentencing memorandum before his hearing, which contextualized his offense against the backdrop of his troubled family life, childhood trauma, and drug abuse.

At the sentencing hearing in October of 2019, the district court began by asking if the parties had objections to the PSI, and then overruled Mr. Kelly's

2

objection to a two-point enhancement under U.S.S.G. § 2K2.1(b)(4)(A). Defense counsel requested a sentence below the statutory maximum that would be closer to the sentence that Mr. Kelly believed he would get when he entered his plea. She also requested that the court recommend placement in a facility offering drug and mental health counseling and that it make those programs conditions of his sentence. Mr. Kelly spoke on his own behalf, apologizing and taking responsibility for his actions, acknowledging that he needed help with his drug addiction, and vowing that he would strive to reform himself.

The court applauded Mr. Kelly for recognizing that he had made the choice to use drugs, and that this decision had led to other bad decisions to violate the law. Before discussing the sentence, the court encouraged Mr. Kelly to use the sentence to "rebuild" himself, little by little "from the inside out." D.E. 44 at 13:5–24. As the court began to discuss its responsibilities in fashioning a sentence, however, it explained that "every time [it] sentence[d] a person, [it was] weighing up protecting society and yet trying to impose a sentence that serves that end but also is beneficial to that person." *Id.* at 14:4–7. "[M]y duty," it added, "is to protect society and to be more concerned about society than you." *Id.* at 14:18–19. It stressed that Mr. Kelly's offense, which had involved breaking into multiple cars and an inhabited home, was "a serious blow to society" because "people have a right to feel safe and secure in their things and in their homes specifically." *Id.* at 16:24–25, 15:19–20.

3

After these statements, the court concluded that "at this point, as it stands right now, society's got to be protected from you." *Id.* at 17:5–6. It reiterated that Mr. Kelly should "use that time that [it was] protecting society to benefit [himself]." *Id.* at 17:7–8. It indicated that Mr. Kelly "need[ed] some time" to gather the tools he needed to recover from his addiction. *Id.* at 17:15, 18:25. The court also observed that "until [Mr. Kelly] g[o]t to the point" where he could live a different life, he "needed to be where [the court was] going to send [him]." *Id.* at 19:10–11.

The court adopted the PSI, pronounced a sentence of 120 months' imprisonment and three years' supervised release, and recommended placement at a facility that provided mental health treatment and substance abuse programs. It stated that the advisory guidelines range was reasonable and appropriate in light of the facts and circumstances of the case. It explained that when calculating sentence, it looked at the facts of the person's case and determined what a reasonable sentence would be, then looked at the guidelines range to see if there was an overlap. In Mr. Kelly's case, the sentence of 10 to 15 years which the court found reasonable overlapped with the advisory guidelines range and the statutory maximum, and was "the sentence that [the court] would impose were there no guidelines or if the guidelines would have required or recommended a lower sentence." *Id.* at 22:2–4.

The court concluded that, "based on the totality of [Mr. Kelly's] criminal history and everything [it had] been able to find, this is an appropriate sentence to

4

impose." *Id.* at 22:5–7.  It noted that the sentence "addresse[d] the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation." *Id.* at 22:8–10.  There were no objections from Mr. Kelly related to the arguments now raised on appeal.

## II

When a defendant fails to object to a sentence's reasonableness before the district court, we review for plain error.  *See United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005) (collecting cases).  In order to prevail, Mr. Kelly "must demonstrate (1) that the district court erred; (2) that the error was 'plain'; and (3) that the error 'affect[ed his] substantial rights.'"  *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) (alteration in original).  To satisfy the last prong, he must show that the error "affected the outcome of the district court proceedings."  *Id.* at 1312 (citation and internal quotation marks omitted).

Mr. Kelly argues that his sentence was both procedurally and substantively unreasonable and that the district court's errors in imposing the sentence were not harmless.  We disagree.

In reviewing a sentence's procedural reasonableness, we must "ensure that the district court committed no significant procedural error during sentencing,"

5

including considering an improper sentencing factor. *United States v. Alberts*, 859 F.3d 979, 985 (11th Cir. 2017) (citations and internal quotation marks omitted).

Under 18 U.S.C. § 3553(a), a court must consider specified factors in determining a defendant's sentence, including the need for the sentence imposed to reflect the seriousness of the offense; the need to afford adequate deterrence to the criminal conduct; the need to protect the public; and the need to provide the defendant with educational training, medical care, or other correctional treatment. *See Tapia v. United States*, 564 U.S. 319, 325 (2011) (quoting 18 U.S.C. § 3553(a)(2)). In *Tapia*, however, the Supreme Court held that § 3582(a) mandates that rehabilitation and correction are not appropriate considerations when a court is determining whether to impose a term of imprisonment, or when it is determining the length of that term. *See id.* at 327. We have held that a *Tapia* error occurs where a sentencing court considers rehabilitation in crafting a sentence, even when rehabilitation is not the dominant factor in the court's calculus or when the court does not specifically tailor the length of the sentence to allow for completion of a rehabilitative program. *See Vandergrift*, 754 F.3d at 1310.

Our review of the sentencing transcript convinces us that the district court considered rehabilitation in determining the sentence. The district court openly stated that it was "weighing up protecting society and yet trying to impose a sentence that serves that end but also is beneficial to that person." D.E. 44 at 14:5–7. It also

6

said that Mr. Kelly "needed some time" to benefit from the rehabilitative tools offered by the prison environment and said that "until [Mr. Kelly] g[o]t to the point to where [he] could do it, [he] need to be where [the court was] going to send [him]." *Id.* at 17:15; 18:25; 19:10–11.  These comments demonstrate that, however ancillary a concern Mr. Kelly's rehabilitation may have been in the district court's calculus, rehabilitation was considered.  *See Vandergrift*, 754 F.3d at 1311 (finding *Tapia* error where the court stated that it needed "to consider what's best for the defendant as a factor in the equation").

To be sure, "*Tapia* does not prohibit a district court from discussing rehabilitation during a sentencing hearing." *Id.*  Particularly in light of Mr. Kelly's reference to his drug addiction and intention to get better, and of defense counsel's request that the court impose a punishment that address the need for rehabilitation, the court was right to attempt to engage with Mr. Kelly and give him sincere advice that the sentence imposed could have therapeutic benefits.  *See id.* (explaining that a court does not err in informing a defendant about opportunities and benefits of rehabilitative programs and treatment).  A court should not be censored from communicating with defendants in this frank and personal way when determining an appropriate sentence.

But it is clear to us that the district court was doing more than just expressing hope and giving advice about Mr. Kelly's rehabilitation.  Its statements show that it

7

was considering the rehabilitative benefits of prison to Mr. Kelly in calculating an appropriate sentence, even if this purpose was not a dominant factor in the decision-making. And because *Tapia* tells us that "a court errs by relying on or considering rehabilitation in any way when sentencing a defendant," we conclude that the district court erred here and that the error is plain. *See id.* at 1312.

Mr. Kelly must also show, however, that the error affected the outcome of the district court's proceedings. *See id.* The defendant bears the burden of persuasion with respect to prejudice and that burden is not easy. *See Rodriguez*, 398 F.3d at 1299. We know here that the outcome would have remained the same regardless of the court's error both because the court seemed predominantly concerned with the seriousness of Mr. Kelly's offense and his potential danger to society, and because the court stated that it would have imposed this sentence even in the absence of the guidelines, "based on the totality of [Mr. Kelly's] criminal history" and "everything [the court] had been able to find." D.E. 44 at 22:2–7.

Mr. Kelly also argues that his sentence was procedurally unreasonable based on the district court's statement that it formulated its own idea of what a reasonable sentence would be before considering the guidelines and without adequately considering the § 3553(a) factors. We are not persuaded.

Although the guidelines are advisory, the Supreme Court has stressed their importance in a court's determination of an appropriate sentence, indicating that they

8

"should be the starting point and initial benchmark" and should remain central to the district court's analysis.  *See Gall v. United States*, 552 U.S. 38, 46, 49–50 (2007).  *See also Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903–04 (2018); *Peugh v. United States*, 569 U.S. 530, 541–42 (2013).  Here, the district court adopted the advisory guidelines range set forth in the PSI.  It also found that the range was appropriate to the facts of the case and provided a reasonable sentence.  And, although the court admitted that it first came to a conclusion in its own mind of a reasonable sentencing range before determining whether that range overlapped with the guidelines, its process kept the guidelines central to the analysis, and does not constitute plain error.  Even if it were plain error, once again, Mr. Kelly has not met his burden of demonstrating that the outcome would have been different.  The district court explicitly said that it would impose the same sentence regardless of the guidelines.

Having addressed Mr. Kelly's arguments as to the sentence's procedural reasonableness, we turn to substantive reasonableness, reviewing the sentence "in light of the totality of the circumstances and the purposes of sentencing stated in [18 U.S.C.] § 3553(a)."  *Alberts*, 859 F.3d at 984 (quoting *United States v. Moran*, 778 F.3d 942, 982 (11th Cir. 2015)) (internal quotation marks omitted).  Mr. Kelly's argument on substantive unreasonableness largely tracks his argument as to procedural unreasonableness; that is, the sentence was substantively unreasonable

9

because the district court relied on an improper factor, rehabilitation, in rendering the sentence and failed to weigh the § 3553(a) factors.

We have already discussed the district court's focus on rehabilitation, and, by our reading, the court adequately considered the § 3553(a) factors when it weighed the seriousness of Mr. Kelly's offense and the need to protect the public from further crimes through Mr. Kelly's incapacitation. A court need not recite the factors in rote fashion or discuss each factor individually to fulfill its obligation of considering them in determining a sentence. *See United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005), *abrogated on other grounds by Rita v. United States*, 551 U.S. 338 (2007). Here, the court listened to the parties' arguments, explained its decision, and discussed the § 3553(a) factors even though it did not robotically reference each factor. On this record, that was enough. *See United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009). Mr. Kelly has not met his burden of showing the sentence was substantively unreasonable.

## IV

After a close review of the record, briefing, and applicable law, we affirm Mr. Kelly's sentence.

**AFFIRMED.**