In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 20-3132

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALLEN TEAGUE,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Southern District of Illinois.
No. 12-cr-30271-SMY-1 — **Staci M. Yandle**, *Judge.*

---

No. 20-3316

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LONNIE WHIPPLE,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Southern District of Illinois.
No. 07-cr-30087-SMY-3 — **Staci M. Yandle**, *Judge.*

————————————

SUBMITTED MAY 19, 2021 — DECIDED AUGUST 10, 2021

————————————

Before WOOD, ST. EVE, and KIRSCH, *Circuit Judges*.

WOOD, *Circuit Judge*. One component of a federal criminal sentence may, and sometimes must, be a period of supervised release that begins after the offender has completed his time in prison. 18 U.S.C. § 3583(a). Statutes usually have something to say about the length of that period. Often they confer considerable discretion on the district court, but there are instances in which they specify the required duration or range. See, *e.g.*, 21 U.S.C. § 841(b)(1)(C).

Those rules, however, pertain to the initial sentence a defendant receives. The picture is different for a person who has completed his term of incarceration and has begun serving his term of supervised release. If that person violates the conditions of his supervised release, his probation officer may move for revocation of supervised release. This case deals with the choices available to the court in the latter circumstance—specifically, whether a term of supervised release that is mandatory for initial sentencing remains a mandatory part of any new sentence after revocation. The government concedes that the answer is no, and that the district court erred when it came to the opposite conclusion. After taking an independent look at the issue, we too conclude that revocation operates under different rules. We therefore vacate the terms of supervised release imposed on the two defendants before us and order a remand for reconsideration under the correct standards.

## I

In each of the appeals we address in this opinion, the defendant violated the conditions of his original term of supervision. Each one appeared in front of the same trial court at a revocation hearing, one four weeks after the other. Acting pursuant to its authority under 18 U.S.C. § 3583(e) and (h), the district court ordered each one to be returned to prison and to serve an additional period of supervised release afterward. Because the issues presented in the two appeals are identical, we have consolidated them for disposition.

### A.  Teague, No. 20-3132

We can be brief with the underlying facts, as nothing turns on them. In 2013, Allen Teague pleaded guilty to two counts of distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). The court sentenced him to concurrent terms of 78 months' imprisonment (a below-guidelines sentence), to be followed by a statutorily mandated 72-month term of supervised release. See 21 U.S.C. § 841(b)(1)(C); 21 U.S.C. § 851. (The required period for the latter was six years because he had a qualifying prior felony drug conviction. *Id.* § 841(b)(1)(C) (sentence 3).) Teague's term of supervised release began on May 24, 2018.

In July 2020, the U.S. Probation Office filed a petition to revoke Teague's supervised release. See 18 U.S.C. § 3583(e); FED. R. CRIM. P. 32.1. The petition alleged that Teague had committed aggravated battery on his pregnant wife, received a speeding ticket, failed to meet monthly financial obligations, and failed to submit monthly reports to his probation officer. After a contested revocation hearing (during which Mrs.

Teague recanted her earlier reports to police), the district court found that Teague had committed aggravated battery and revoked Teague's supervised release. On October 20, 2020, the court imposed a term of 36 months' imprisonment and an additional 72 months' supervised release. Its comment at sentencing indicates that it understood that the period of supervised release was required by the statute:

> So, upon release from imprisonment, the defendant shall be placed on supervised release for a term—I believe the statute requires six years? 72 months? …

Tr. of Oct. 20, 2020, at 81. Teague's lawyer did not object, nor did the Probation Officer or the Assistant U.S. Attorney.

## B. Whipple, No. 20-3316

Four weeks later, the court had before it the Probation Office's petition to revoke Lonnie Whipple's supervised release. In 2007, Whipple had pleaded guilty to one count of conspiracy to distribute over 500 grams of a mixture containing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and one count of distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). The court sentenced him to concurrent terms of 240 months' imprisonment on count one and 141 months' imprisonment on the other count (count 4), to be followed by statutorily mandated concurrent terms of 120 months' and 72 months' supervised release. 21 U.S.C. §§ 841(b)(1)(A), (b)(1)(C). (Like Teague, Whipple had a prior qualifying felony, thus triggering the mandatory six-year minimum.) In 2015, Whipple's term of imprisonment was reduced to 81 months pursuant to 18 U.S.C. § 3582(c)(2). As a result, his supervised-release period began on November 2, 2015.

In April 2018, the district court revoked Whipple's original term of supervised release after he failed to meet his reporting requirements, began using methamphetamine again, committed various driving violations, and fled from the police. The court sentenced him to 30 months' imprisonment, again followed by concurrent terms of 120 months' and 72 months' supervised release. Whipple's second term of supervision began on February 13, 2020, but it did not go well. In July 2020, the Probation Office filed a petition to revoke the second term of supervised release. This time, Probation alleged that Whipple had committed driving violations, failed to appear at probation visits, and changed his residences without notifying his probation officer.

As requested, the court revoked Whipple's second term of supervision on November 16, 2020. The government recommended that the court impose 12 months' imprisonment with no additional supervised release. The court chose a different approach. It sentenced Whipple to an above-guidelines term of 24 months' imprisonment on count one and six months' imprisonment on count four, to be served concurrently. And here is what it had to say about a new term of supervised release:

> Unless I'm missing something, I believe that – I don't – I believe that in order to comply with the statute, that I am *required* to impose, on Count 1, not less than 120 months and, on Count 4, not less than 72 months. … Well, let me just make it clear that that is my – I read that as *statutorily mandated*. … So, I just want to make it clear, (A), I believe it's *statutorily mandated*. But even if I didn't, I'm not – I would probably – I would likely impose additional supervised release.

Tr. of Nov. 16, 2020, at 14, 16–17. Neither Whipple's lawyer nor anyone else present objected to the court's assertion that the terms of supervised release were required by statute.

Now, on appeal, both Teague and Whipple argue that the district court erred in its view that the terms of supervised release that it eventually imposed were statutorily mandated.

## II

Before proceeding, we note that neither defendant properly preserved his objection to the supervised-release component of his revocation sentence. But we see no intentional relinquishment of a known right, and so the problem is not waiver. (If it were, the appeals would be over.) Instead, in both cases we are looking at forfeiture. A defendant forfeits a challenge by accidentally or negligently failing to object in district court. *United States v. Wylie*, 991 F.3d 861, 863 (7th Cir. 2021). Review is possible, but only for plain error. *United States v. Brown*, 973 F.3d 667, 707 (7th Cir. 2020). The Supreme Court has explained what this entails:

> [Federal] Rule [of Criminal Procedure] 52(b) review—so-called "plain-error review"—involves four steps, or prongs. First, there must be an error or defect—some sort of "[d]eviation from a legal rule"—that has not been intentionally relinquished or abandoned, *i.e.,* affirmatively waived, by the appellant. … Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. … Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the district court proceedings." … Fourth and finally, if the above three prongs

are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

*Puckett v. United States*, 556 U.S. 129, 135 (2009) (citations omitted).

In the present appeals, the government concedes the first two requirements, but originally it contested the third and fourth. It argued that the district court's section 3553(a) findings indicates that the court would have imposed the same terms of supervision even without its erroneous belief that the terms were statutorily mandated. Thus, it reasoned, the court's mistake did not affect the defendants' substantial rights. See *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1347 (2016). The government also argued that because the defendants were aware that some term of supervised release was likely and quibble only with the length of the sentence imposed, the fairness and integrity of the judicial process has not been affected.

About a week after the government submitted its briefs in these cases, we decided *United States v. Wylie*, 991 F.3d 861 (7th Cir. 2021). In *Wylie*, a district court imposed a term of 60 months' supervision based on its belief that the statute mandated such a sentence. *Id.* at 862. This was error, we held, because the defendant qualified for safety-valve relief under 18 U.S.C. § 3553(f), which relieves defendants from the constraints of statutory minima. *Id.* at 864. The court was thus empowered not only to impose a prison sentence below the otherwise applicable statutory minimum, but also a term of supervised release that was lower than the statutory minimum.

Citing *Molina-Martinez*, we found that Wylie had established that the error had affected his substantial rights and the fairness, integrity, or public reputation of judicial proceedings. *Id.* We did "not consider the government's arguments that the sentence should nonetheless stand because it otherwise falls within a reasonable range[,]" *id.*, nor did we assume that the district court would have imposed the same sentence, since there was no clear indication to that effect, *id.* We reasoned that improper sentencing calculations are "of the courts' own making, there is a relatively low cost to correct them, and the proper application of the Guidelines ensures the fairness of sentencing among defendants." *Id.*; see *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018). We vacated that portion of Wylie's sentence and "remand[ed] for the limited purpose of determining it anew." *Wylie*, 991 F.3d at 862.

In light of *Wylie*, the government has now abandoned its objections. It concedes that both Teague and Whipple have met all four elements of the plain-error test. Its concession does not relieve us of the obligation to evaluate this issue on our own, but it is nonetheless significant.

We do note one difference between *Wylie* and the cases before us—in the revocation setting now before us, there is no advisory guidelines range. *Wylie* included the additional wrinkle of the safety valve, which relieved him of the *initial* mandatory sentencing terms. But the question before us does not concern initial sentencing; it is about the scope of the district court's powers in a proceeding to revoke supervised release. That is governed by 18 U.S.C. § 3583(h), which reads as follows:

> **Supervised release following revocation**.—When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court *may* include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release *shall not exceed* the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

*Id.* (emphasis added). The use of the term "may" in the first sentence of this section is unambiguous: it is up to the court whether to add additional supervised release after the defendant serves his additional time in prison. Sometimes that is appropriate, but sometimes (especially with incorrigible defendants) courts throw up their hands, order as much time in prison as they can, and decline to add further supervised release. See, *e.g.*, *United States v. Richardson*, No. 1:07-cr-00066-SEB-MJD, 2019 WL 6974451, at *2 (S.D. Ind. Dec. 20, 2019) (declining to add further supervised release where defendant "returned to the same criminal conduct within two years following his release, all while under supervision"); *United States v. Bishop*, No. 6:09-CR-10-GFVT-HAI, 2019 WL 2427964, at *3 (E.D. Ky. May 9, 2019) (concluding that adding more supervised release "would be a waste of resources" where defendant had already "rack[ed] up four revocations"); *United States v. Ingraham*, No. CR-12-34-GF-BMM-01, 2015 WL 5286593, at *2 (D. Mont. Sept. 8, 2015) (declining to add additional supervised release "based on [the defendant's] apparent inability or unwillingness to comply with the conditions of his release").

That reading is reinforced in the next sentence, which pre-
scribes a ceiling for additional supervised release, but no
floor: it "shall not exceed" the specified amount. We thus con-
clude that the court made an error of law when it stated, in
both Teague's and Whipple's cases, that it was compelled to
follow the statutory minimum for supervised release that ap-
plies to original sentencing proceedings. In fact, it was free, if
it thought this best, to impose a lower term of supervised re-
lease. Its contrary impression amounts to plain error. See
*United States v. Campos*, 922 F.3d 686, 687–88 (5th Cir. 2019)
(likewise finding plain error where, contrary to the language
of section 3583(h), the district court determined that it was re-
quired at post-revocation sentencing to impose the minimum
supervised release mandated by the defendant's underlying
conviction). We add that although the court indicated that
some additional supervised release would be appropriate for
each defendant, it never said that it would definitely have
chosen these periods. We thus do not regard the error as
harmless.

### III

There is one more matter to decide: remedy. Generally,
"when one part of the [sentencing] package is disturbed, we
prefer to give the district court the opportunity to reconsider
the sentence as a whole so as to effectuate its sentencing in-
tent." *United States v. Mobley*, 833 F.3d 797, 801 (7th Cir. 2016)
(quotations omitted). But it is not always necessary to reach
back that far. "[A] more limited remand is advisable when the
district court's reasoning convinces us that the rest of the sen-
tence would not change." *Wylie*, 991 F.3d at 865. Based on the
court's findings for purposes of section 3553(a), we are

persuaded that the rest of the sentences it imposed should be left intact.

In each of these appeals—No. 20-3132 (Teague) and No. 20-3316 (Whipple)—we REMAND to the district court exclusively for the purpose of reconsidering the terms of supervised release.